# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SMITH'S EX'X AND ALS. V. PROFITT'S ADM'R AND ALS.

JANUARY 27th, 1887.

Absent, LEWIS, P.

1. WITNESSES—*Objection waived—Competent when examined.*—Witness incompetent when he deposed, but cross-examined without objection, his deposition cannot be afterwards objected to. If competent when he deposed, his deposition cannot become inadmissible by later events.

2. CHANCERY PRACTICE—*Cross-bill.*—Depositions in original suit may be read under cross-bill when so directed.

3. IDEM—*Master's report.*—When depositions are taken under decree for account, the usual certificate is unnecessary.

4. REAL ESTATE—*Sale—Time.*—It will not be presumed that time was intended to be *of the essence,* from mere fixing day for delivering deed or paying price.

5. TRUSTS—*Implied.*—When property is bought by one for another, and is conveyed to former, and is partly paid for by latter, an implied trust arises in favor of the payer to the extent of his payment.

6. PURCHASERS—*Notice—Case at bar.*—One buying from holder of legal title, with constructive notice of trust on the land in favor of one who has partly paid the purchase money, must take subject to that trust. Such is the case here.

7. CHANCERY PRACTICE—*Relief of beneficiary.*—In case of purchase with notice of trust, the court may properly decree that unless within a given time, purchaser pays the amount of said trust, the deed of trust given by purchaser for the purchase money, shall be enforced, without decreeing first against the vendor, or against latter in favor of purchaser.

8. CHANCERY PRACTICE—*Pleadings—Presumption.*—Where pleadings in the record are unexplained as to how and when they get there, but are mentioned as filed in other pleadings, and the parties were represented by counsel taking depositions, they must be treated as properly in the case.

9. IDEM—*Demurrer—Presumption.*—Where record does not show that a demurrer has been overruled, that must be presumed, if the court has decided on merits for plaintiff.

10. BANKRUPTCY—*Assignee—Bankrupt's property.*—Assignee may assert his right to proceeds of his bankrupt's trust property sold by trustee, in a suit wherein the ownership of said proceeds is litigated.

11. IDEM—*Statute of limitations.*—The assignee's claim is barred by lapse of two years from maturity of his claim, and not from date of assignment.

Appeal from decree of circuit court of Albemarle county, rendered May 26th, 1885, in the cause wherein James M. Smith and T. T. Norman are plaintiffs, and B. C. Flanagan, S. G. White, O. Rierson, trustee, N. M. Page, and T. L. Michie and L. D. Hanchel as assignees in bankruptcy of B. C. Flanagan, J. A. Profitt and J. L. Cochran, his assignee in bankruptcy, and Putney & Watts and other judgment creditors of J. A. Profitt, are defendants; and in the cross-suit brought by J. L. Cochran as such assignee, against J. M. Smith and all the other parties in the original suit, and Mary J. Profitt, wife of J. A. Profitt.

The original bill was filed October 6th, 1876. It alleges that complainants, Smith and Norman, on the 30th of June, 1873, purchased from defendants, Flanagan and White, a house and lot in Charlottesville, known as "Prout's property," and afterwards as "Virginia House," for $6,250, payable as follows, to wit: A negotiable note payable at sixty days for $2,083.33, and three bonds each for $1,388.89, payable to the vendors in one, two and three years, with interest at eight per cent. payable semi-annually; that in this transaction, Flanagan acted for

himself and White; that by deed of the date of the sale the vendors and their wives conveyed the property to complainants, who conveyed same to O. Rierson in trust to secure the note and bonds; that they paid the note and two of the bonds, and held an account against Flanagan for $66.33, as a set-off against the third bond, which they learned was held by N. M. Page; that when they purchased they had no intimation that any one set up any claim to the property; that since the payment of all the purchase money, they had heard that J. A. Profitt claims some interest therein by virtue of a secret understanding with their vendors; that said Profitt was adjudicated a bankrupt August 31st, 1871, and J. L. Cochran appointed his assignee; that prior thereto, several creditors got judgments against him, and claim that they have liens on Profitt's interest in the property; that Page was about selling the property to pay said last bond, and said creditors to litigate their rights; that complainants had always been ready to pay the last bond less their said set-off, but want the subjection of the property restrained until the rights of the claimants are judicially determined, and all clouds removed from the title, to which end they invoke the aid of equity. And they pray that said defendants be required to answer; that Page and Rierson be restrained as aforesaid; that the conflicting claims of Page and of Profitt's creditors be determined; that complainants be allowed to pay into court the amount of the last bond, less their said set-off; that all the claims of those parties be added to that fund, to be disposed of as the court thinks proper, and that they have general relief in the premises. The injunction was granted as prayed for, and the cause was duly matured. Cochran, assignee, answered, averring that he and D. Wood, as agents, sold this property March 11th, 1869, to Flanagan and White for $4,200, payable, $150 cash, $1,643.46 September 1st, 1869, $1,333.08 January 1st, 1870, and $1,032.04 January 1st, 1871; that he was

informed by J. A. Profitt that Flanagan and White purchased for him; that he was to pay them $500 *bonus*, and that the rents to accrue and the payments made by himself were to go to Flanagan and White till they were fully paid; that on the day of the sale Flanagan drew up, and Profitt signed and left with him, a written memorandum of their agreement; that the $500 bonus was paid at once; that Profitt took possession at once, remodeled the house, and built a large stable, at the cost, in all, of about $2,000; that the property was then rented out and the notes for the rent turned over to Flanagan and White as payments on the property; that in 1873 Profitt tried to sell the property to Smith and referred him to respondent as his assignee, who told him how the property was held—that is, by Flanagan and Smith as purchasers, with an equitable title in Profitt (then in respondent as assignee), under his contract with Flanagan and White, and that by respondent's uniting with Flanagan and White, and Mrs. Profitt's releasing her dower claim, a good title might be made; that the purchase money, over what Profitt owed Flanagan and White, must be paid to respondent as Profitt's assignee in bankruptcy; and that he would see Flanagan about Smith's offer; that upon Flanagan and respondent meeting Smith, the sale was made to Smith and Norman at the price of $6,250, payable and the property conveyed, and the purchase money secured as stated in their bill; that as respondent knew that Profitt owed Flanagan and White as much as the cash payment, he consented that Smith pay that payment to them, but told Smith that his other payments must not be paid until the amount due from Profitt to Flanagan and White was ascertained; that from then till the fall of 1875 he had tried in vain to get Flanagan to settle; that when the deferred payments were maturing he warned Smith not to make payment to Flanagan and White, as he claimed the residue; that yet Smith and Norman did make

all their payments to Flanagan and White, except the last bond; that when he last reminded Smith of his warnings; Smith said he remembered them, but thought that as Flanagan and White were wealthy, he ran no risk in paying them. And respondent prayed that an account be taken as to how much Profitt owed Flanagan and White at the time of the sale by them to Smith and Norman—to wit: June 30th, 1873, and as to the excess of payments by Smith and Norman over that indebtedness, and that such excess be paid to respondent as assignee, and that if they failed to refund that excess, Smith and Norman be required to pay it; and also that an account be taken as to how much of such excess should be paid to Profitt's judgment creditors, and how much to Mrs. Profitt as commutation for her contingent right of dower, and how much to respondent for Profitt's general creditors.

Respondent denied the allegations of the bill, so far as they were in conflict with his answer, especially the statement to the effect that the complainants are "purchasers for value without notice"; and contended that N. M. Page acquired no interest in the last bond, because his assignors had none. And with his answer, this respondent exhibited the memorandum signed by Profitt.

White answered, admitting the sale, the payments, the conveyance, and the trust deed as stated in the bill; and stating that soon after the sale to complainants, the three bonds were assigned by himself and Flanagan to Page, as collateral for a debt they owed him; that Page collected the two first bonds, but that the last was wholly unpaid, and should be collected and paid to Page, and denying that Profitt and his creditors were entitled to anything.

On the 13th of February, 1877, the court entered a decree directing the collection of the last bond, and an account as to whether or not Profitt or his wife, or his creditors, had any.

claim to the proceeds of the sale of this property; and if any, how much, to whom due, and in what proportion; but adjudging that the trust deed was to remain unreleased as security for any money paid by Smith and Norman to Flanagan and White, which the court might thereafter direct them to repay; but decided no question raised in the cause. N. M. Page demurred to and answered the bill, claiming to be the *bona fide* holder of the last bond for value without notice of Profitt's claim; and that Flanagan and White were fee-simple owners of the property, and sold and conveyed it to Smith and Norman, who became purchasers for value without notice; and filing the deed from Cochran and Wood to Flanagan and White, and the answer of said Profitt to a rule issued against him in the case of Fray against Points, which, respondent claimed, estopped Profitt from setting up any claim to the property. He then states Profitt's claim, as he had heard it, and denies that Profitt is entitled to have specific performance of the parol contract, because he failed to comply with the terms thereof.

The deed filed is an ordinary conveyance in fee-simple of this property, and the answer May 13, 1869, states that the property had been sold March 11, 1869, to the grantees, Flanagan and White.

In the record is the unsworn answer of J. A. Profitt, dated July 2, 1877, but not endorsed as filed. This respondent says that the answer of J. L. Cochran correctly states, in substance, how respondent became the purchaser of the Virginia House in March, 1869; that about that time he informed the complainants of the fact and manner of his purchase; that he took immediate possession of the property and improved it extensively, putting a new front to the house, fitting up a storeroom and bar-room, and built a stable on the lot; that complainants did business close by, and, indeed, used water from

respondent's pump, and knew well from conversations with him that he had purchased the property through Flanagan and White, and made them payments on it; that he went into bankruptcy sometime afterwards, and learning that complainants wished to buy the property, referred Smith, one of them, to his assignee, and apprised the latter of the chance to sell; that not more than a month after they bought, respondent had a conversation with Smith, in which he alluded to his having gone into bankruptcy, and to his creditors having an interest, subject to his wife's contingent right of dower, and to his own claim of homestead. Respondent denied the allegation that complainants were purchasers for value without notice. He averred that he had in his schedule surrendered his interest in the property and claimed his exemption. In conclusion, he prayed that his interest be ascertained, and the rights of himself and wife be secured, and the balance paid to his assignee.

The point having been raised by counsel that the assignee and creditors of Profitt had no right to assert any claim in this cause against White, or Smith and Norman, on account of the matters set up in the answer of the assignee, the court, by its said decree of February 13th, 1877, expressly reserved its decision of the question whether any such claim must not be asserted by a cross-bill. In view of the doubt thus raised, Cochran, by leave of court, filed his cross-bill.

This cross-bill recites the original bill, the answers, and the proceedings thereon, and mentions that Mrs. Mary J. Profitt had filed her petition in the cause for the commuted value of her contingent right of dower in the property; he then repeats his case as assignee of J. A. Profitt, as stated in his answer, and concludes with similar prayers. All the parties to the original bill, including Mrs. Profitt, who had come in by petition, were made parties, and the cross-bill was matured against all.

Smith and Norman filed their demurrer, pleas and answer

Statement.

to the cross-bill. The first plea set up the bar of section 5057 of the United States statutes, requiring an assignee in bankruptcy to assert his claim within two years of the date of *the assignment* to him, which date was, here, August 19th, 1874.

The second plea sets up the Virginia statute, which requires a suit to be brought within five years after the accrual of the cause of action. The answer admitted that the cross-bill correctly recited the bill, and the proceedings thereon, the sale and conveyance of the Virginia House by Cochran and Wood to Flanagan and White, and the purchase thereof from the latter by these respondents; and that after they had paid the cash payment, Cochran did, on one occasion, say something to Smith about their not paying the deferred installments until he, Cochran, could have an interview with Flanagan. But they deny, that they had any knowledge, at the time of their purchase, of the claim of Profitt, his assignee, his wife, or his creditors, and that Cochran ever told them anything about such claim, or notified them at any time, not to pay the deferred payments to Flanagan and White; and insist that they are purchasers for value without notice; and they deny all allegations inconsistent with their answer.

White also filed his demurrer, pleas and answer, his pleas being the same as those of Smith and Norman. His answer admits the sale of the Virginia House by Cochran and Wood to Flanagan and himself, the agreement of Profitt with them that he should have the property upon certain conditions, to wit: that he should pay them a *bonus* of $500, and unit their obligations for the purchase money as they fell due; that Profitt did pay the $500 *bonus,* but failed to meet all the payments as they fell due, or at any other time; that if he paid any more, it was to Flanagan, who had no right to receive respondent's share; and in other respects the answer is in correspondence, substantially, with the respondent's answer to the original bill.

On the 20th of October, 1880, the court entered an order directing that all the depositions taken in the original suit be read in the cross-suit, with the same effect, and subject to the same exceptions as if taken in the latter.

The suit was revived February 3d, 1882, against Mary J. Profitt, as administratrix of J. A. Profitt, deceased; and on the 23d of October, 1883, against Ella Smith, executrix of Jas. M. Smith, deceased.

N. M. Page likewise demurred, pleaded, and answered. His pleas are the same. His answer avers that he is a purchaser for value without notice, and that his right to the last bond cannot be affected by Profitt's latent equity; and he adopts White's answer. And on May 19th, 1883, J. L. Cochran, as plaintiff in the cross-bill, demurred to the several pleas, and, in the contingency of the demurrer being overruled, replied generally.

Flanagan delayed filing his demurrer, pleas and answer to the cross-bill until February 12th, 1885. The pleas are the same. His answer admits his and White's purchase of the Virginia House, the parol agreement with Profitt, and the payment of the *bonus,* and some other payments by Profitt; but insists that some months after the date of that contract Profitt went into bankruptcy and abandoned the same, and made no claim to the property until he heard they were about to make an advantageous sale thereof. He denies that Cochran, in any capacity, had anything to do with the sale to Smith and Norman. He then combats the allowance by the master, of certain credits allowed Profitt on his purchase, and avers that the improvements made by Profitt were made previous to his and White's purchase of March 11th, 1869. The petition, dated July 2d, 1877, is in the record, but it does not appear how it came into the record. In it she claims a contingent dower interest in any surplus of the proceeds of the sale of the Vir-

ginia House in excess of what her husband owed Flanagan and White when the sale was made by them to Smith and Norman, and prays that the court will order an account of the commuted value of her interest and secure it to her.

On the 17th of September, 1884, the master filed his report in obedience to the decree of February 11th, 1877, together with the evidence whereon the report is based. He reports that Cochran and Wood, on the 11th of March, 1869, sold the Virginia House to Flanagan and White for $4,428.56, and conveyed it to them before the last payment fell due; that on same day Flanagan and White sold it to Profitt by parol at an advance of $500, and on Profitt's undertaking to meet all the payments as they fell due; that it is admitted by White that Profitt paid the $500 advance, and that White received his half of it; that Profitt paid in money, and notes given for rent, &c., on his purchase, to Flanagan and White, $2,386.30, besides the bonus; that at the date of the sale to Smith and Norman, Profitt owed Flanagan and White a balance, principal and interest, of $3,147.35; that after paying the balance there remains of the proceeds of the sale a surplus of $3,102.65, coming to Profitt and those claiming under him, which amounted, on the 10th of October, 1884, to $5,369.62; that J. A. Profitt died 15th May, 1881, when Mrs. Profitt's contingent became a vested dower interest, and she entitled to $1,034.18 for her life; that the interest thereon to 10th of October, 1884, $211.32, was hers absolutely; that the commuted value of her life estate in the $1,034.18, she being then 49 years old, was $671.56, so that the amount coming to her, as hers absolutely, out of the subject, was $882.88, with interest on $671.56 from October 10th, 1884, till paid; that the aggregate of the principal, interest and costs of the judgments against Profitt amounted, on 10th of October, 1884, to $2,593.70; that Profitt assigned to J. L. Cochran, individually, out of his exemption

$350, which, with interest, amounted, on 10th October, 1884, to $641.95; that Profitt claimed, in his bankrupt schedule, his exemption under the State law, and his exemption of $500 under the bankrupt act; that the articles of property surrendered, besides his interest in the Virginia House, were valued at only $64, and were less than the State law allowed; that this $500 exemption, with interest from 30th June, 1873, amounted, on the 10th October, 1884, to $833.33. And the master concludes his report with a statement of the manner of distributing this surplus.

On the 26th of May, 1885, the circuit court heard the case on the papers formerly read, and on the answer of J. A. Profitt, and on the petition of Mrs. Mary J. Profitt, which were objected to on the ground that they had never been filed, and on the demurrer and answer of N. M. Page, the demurrer, pleas and answer of B. C. Flanagan, the answer of Ella Smith, infant defendant, by her guardian *ad litem*, upon the report of the master and on fourteen exceptions thereto. The exceptions to the depositions of J. A. Profitt and J. L. Cochran were overruled. The court held that the federal statute of limitations began to run against Cochran as assignee in bankruptcy from the 19th of August, 1874, and that as this suit was brought on the 6th of October, 1876, his cause of action as such assignee was barred, and that his participation in the sale of the bankrupt's interest in the property in controversy, not being authorized, was a void act, and could not extend his rights as such assignee under the bankrupt law, and that he, as such assignee, should take nothing and go out of court. It also held that Smith and Norman are affected with notice of Profitt's equity in the property, and must take it subject thereto; that N. M. Page could take no better title to their bonds than his assignors had; that the exceptions to the master's report be overruled, except so far as they pertained to

the federal act of limitations, and that the report be confirmed, except as to the mode of distribution and a few other unimportant matters, as to which the court amended it, and ordered that of the Profitt surplus—$169.62—be reserved to pay costs; that there be paid $882.88 to Mrs. Profitt; to the judgment creditors, $2,593.70; Profitt's exemption and interest thereon, $833.33, out of which J. L. Cochran, individually, should be paid $641.95, and Mrs. Profitt, as administratrix of her husband, $191.38—which sums aggregate $4,479.53, and leave, of the surplus of $5,369.62, "the sum of $890.09, that would go" (said the court), "to J. L. Cochran as assignee in bankruptcy, but for the bar of the federal statute." The court then appointed Perkins and Southall receivers of the money deposited in the Bank of Albemarle by Smith and Norman to the credit of the cause, and ordered them with it to pay, first, the costs of the suit; secondly, $882.88, with interest on $671.56 from 10th of October, 1884, till paid, to Mrs. Profitt; thirdly, as far as it would go, to judgments reported against J. A. Profitt; and also ordered that Smith and Norman pay to said receivers enough money to satisfy the residue of the judgments and Profitt's exemption and the interest thereon, and estimated that for this purpose the sum of $1,948.72, as of the 10th of October, 1884, would be sufficient—that is to say, $2,838.81, less $890.09, and ordered that, if Smith and Norman do not pay this sum of $1,948.72, as of 10th October, 1884, within sixty days, then O. Rierson, trustee, should sell the Virginia House property on the terms prescribed in the trust deed of 30th June, 1873, and turn over that sum out of the proceeds, to the receivers, and report the sale.

The court further decreed that the receivers disburse the sum of $1,948.72, as of 10th of October, 1874, as follows, to wit: to the judgment creditors, so much as may remain unpaid them; to J. L. Cochran, individually, $641.95, with interest on

$350 from 10th of October, 1884; to Mary J. Profitt, administratrix of J. A. Profitt, deceased, $191.38, with interest on $50 from 10th October, 1884. This left the $890.09 of the Profitt surplus in the hands of Smith and Norman.'

From this decree, Ella Smith, executrix of James M. Smith, deceased, T. T. Norman and 'S. G. White obtained an appeal and *supersedeas.*

*Duke & Duke,* for the appellants.

*S. V. Southall* and *Blakey & Blakey,* for the appellees.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The appellants make several assignments of error in the decree, which will be considered consecutively.

I. "That the circuit court erred in overruling the appellants' exception to the reading of J. A. Profitt's deposition." This deposition was taken September 4, 1877. The witness was cross-examined by the appellants on all the issues, and no exception was taken to his competency until September 11, 1884. In *Hord* v. *Colbert,* 28 Gratt. 49, this court held that such cross-examination was a waiver of objection to competency, to which exceptions could not be made afterwards. But it is contended that Profitt was not incompetent when he testified, but became incompetent afterwards. Competency at the time of giving evidence is all that was ever required of a witness, and it is all that is essential. In *Keran* v. *Trice,* 75 Va. 690, this court also held that the deposition of a witness taken at a time when he was competent to testify, is not rendered inadmissible as evidence by subsequent incompetency. This would seem a sufficient answer to this assignment, which is

plainly untenable. But the record discloses a different state of facts from the presentation made by the appellants, and clearly shows that the interests of the wife of this witness had become involved in this suit when his deposition was taken, and that he was, therefore, incompetent to testify in this cause when he deposed. The original bill mentions the claims of Profitt's creditors to the property in controversy, and prays that the court decide upon the conflicting claims of Page, and of those creditors. The answer of Cochran, as assignee in bankruptcy of Profitt, filed February 6, 1877, and Profitt's own answer, set up the claim of Profitt's wife to a contingent right of dower in the property, and asked for its ascertainment. The decree of February 13, 1877, directs the master to enquire and report whether Profitt or *his wife* or his creditors have any claim to the property. This deposition was taken in execution of this decree; and in order to enable the master to compute the present value of the wife's contingent right, this witness was asked, and testified that he was then forty-five and his wife forty-one years old; and the master afterwards reported on this basis the commuted value of her contingent right of dower. The cross-bill says that Mrs. J. A. Profitt had filed her petition in the cause, and none of the answers deny it. And her petition, dated 2d July, 1877, which is also the date of her husband's answer, is found in the record, though there is no note of when or how it came into the record. When T. T. Norman's deposition was taken on 4th of September, 1877, the record shows that among those present was "E. R. Watson, counsel for J. A. Profitt *and wife*," and that Norman was cross-examined by "E. R. Watson, counsel for J. A. Profitt and Mrs. Profitt." And so, likewise, when the appellant White's deposition was taken. The general rule is that a husband is not competent to testify for or against his wife. Profitt, then, was incompetent when he deposed. But this does not change the

result; for, the cross-examination without previous exception, waived the objection of incompetency. Nor was this deposition inadmissible because it was taken before the cross-bill was filed. The circuit court had provided for this by decreeing in October, 1880, that all depositions taken in the original should be read in the cross-suit also, with the same effect and subject to the same exceptions, evidently meaning exceptions that had theretofore been taken. Besides, the parties and the issues were the same in both suits.

II. "That the circuit court erred in overruling appellants' exceptions to the reading of J. L. Cochran's deposition, Cochran and Smith being the original parties to the transactions involved, and Smith having died after Cochran had testified and before he had closed his evidence." This deposition, like Profitt's, was taken before the master under the decree of account. The witness was cross-examined by the appellants in August, 1882, without objection to his competency. The exception for want of competency was taken February 10, 1883. It came too late. Moreover, no certificate is necessary to depositions taken under a decree for account. The master's statement in his report supplies the place of the certificate usual and necessary when the depositions are taken under other circumstances. And here the master's report says: "Nothing more was done in the cause until 10th of August, 1882, when the deposition of J. L. Cochran was commenced, and, not being completed, was adjourned over until the 12th, and again to the 14th August, 1882, when it was completed and closed." And Norman's affidavit says: "Cochran concluded his evidence 19th August, 1882." But that affidavit was *ex parte* and otherwise illegal as evidence.

After instituting his suit, Smith lived over seven years, and had time enough, surely, to testify, had he been willing to subject himself to cross-examination. His delay to testify

until the evidence of his adversary was all in, and "his sudden death" defeating his alleged intention to testify, cannot render inadmissible the deposition of Cochran, who was competent when he deposed. The depositions, as is the usual practice, were taken in no special order, but promiscuously, as was dictated by convenience. The prescribed order for taking evidence in an action at law is seldom observed in chancery causes, and in many, if not in the majority of cases, the enforcement of the rules would oftener produce confusion and delay than otherwise. There was, therefore, no error in this particular.

III. "That it was error to overrule the appellants' exception to so much of the master's report as found that the alleged contract of Profitt with Flanagan and White had not been abandoned" [forfeited] "at the date of the sale to Smith and Norman."

The record discloses that J. A. Profitt first became purchaser of the property in question under a decree of the circuit court of Albemarle county, in the suit of *Fray* v. *Points*, the property being then known as the Points property, but since as the Virginia House. Early in 1869 Profitt, as such purchaser, being largely in default, a rule was awarded against him in said suit, returnable to the May term, 1869, to show cause why the property should not be re-sold. In advance of action by the court on this rule, Profitt engaged Drury Wood and John L. Cochran to act as his attorneys in fact, and make sale of said property, Profitt's object being to put himself in an attitude to make good his default as purchaser from the court, and to retain the property. The property being thus sold by Wood and Cochran for the default of Profitt, he was not in a position to bid for it, and being desirous to retain the property, he entered into the arrangement with Flanagan and White *to buy it for him.* The contract, in substance, was this: "Profitt

agrees to pay Flanagan and White $500 *bonus*, and to meet their payments as they fall due."

Flanagan and White made the purchase for Profitt at $4,200. And in accordance with the agreement and understanding of the parties, Flanagan and White were reported to the court in the case of *Fray* v. *Points*, and the sale was confirmed to them.

A careful examination of the evidence discloses that Profitt paid the *bonus* promptly; that he took immediate possession and made improvements, between 1869 and 1873, enhancing the value of the property about one-third, and rented the property out. But he did not meet the payments of Flanagan and White *as they fell due*. On the contrary, up to the 26th of October, 1869, he had paid only $20. Hence, he failed to meet both the small cash payments of $150, and the first deferred payment of $1,643.46, due September 1st, 1869. That was the time to cry out "abandonment!" forfeiture!" But *after* that, Flanagan, acting for himself and White, received from Profitt, at different times, the following sums, to wit: $100, $101.30, $230, $675, $450, and $60, aggregating $1,616.30, and along in 1872 and 1873, up to and after the sale by Flanagan and White to Smith and Norman, Flanagan actually received from McIntire, Profitt's tenant, rent to the amount of $391.38, and had opportunity to collect, but failed to collect additional rent of McIntire to the amount of $368.62, all of which he had agreed should go as credit on Profitt's contract, making them an aggregate of $2,386.30, in addition to the *bonus*, for which Profitt is entitled to credit.

There is certainly, so far, nothing to evince that Profitt meant to abandon the contract. He went into bankruptcy August 31st, 1871. In his schedule, which is in the record, he surrendered this property, exactly describing his relation thereto, and claimed his exemption out of it. Then, there is the evidence of his connection with the sale of the property,

June 30th, 1873, and with this suit up to his death in May, 1881, which refutes the idea that, after paying out for *bonus*, payments and improvements of $4,500, he designed to abandon his purchase.

As a rule, the courts will not infer that the parties intended to make time of the essence of the contract for the sale of land, from the mere appointment of a day for the delivery of a deed, or the payment of the price. The intention must be unequivocally expressed, or it must appear from the fluctuating, uncertain or perishable nature of the commodity. It is a general rule that language which admits of a milder interpretation, shall not be so construed as to work a forfeiture. In a case where the first installment was to be paid October 1st, 1848, when the title was to be conveyed, the court said : "This is nothing more than a naked covenant to pay money at a particular day, which has never been held to mean that time is of the essence of the contract, for the plain reason that it admits of adequate compensation ascertained by law in the shape of damages." 1 Smith's Lead. Cas 115, 136 ; 2 Lead. Cas. in Eq. 1129 ; *Jackson* v. *Ligon*, 3 Leigh, 187.

In *Booten* v. *Scheffer*, 21 Gratt. at page 493, Staples, J., said : "Now, it is true that a mere default in payment, as a general rule, is not a sufficient reason for refusing a specific performance, because the default admits of compensation, and in most cases, interest is regarded as equivalent for the non-payment of the purchase money." In that case, the purchase price of the real estate sold to Scheffer was payable in Confederate currency, which was daily depreciating in value. Scheffer failed, under circumstances indicating a disposition to profit by such depreciation, to pay the purchase money when due. This court held in that case, that time was of the essence of the contract, under the peculiar circumstances. That case is in no material feature, at all like the case at bar, but it does

illustrate most clearly the principle applicable here, by its very dissimilarity. Here, there was no depreciation of the currency in which the price was payable, and the delay in payment was fully compensated with interest. We think, therefore, that this assignment is not well taken.

IV. "That it was error to overrule the appellants' exception to so much of the report as found that Profitt had an interest in the proceeds of the sale of the property; such claim, if it existed, depending on his ability to have specific performance of his alleged contract." The contract, as averred and proved, is fully up to the standard as respects certainty. It was partly performed by delivery of possession and partial payment. It had not been abandoned or forfeited, it not being expressly, nor, from the circumstances, impliedly a contract wherein time is of the essence. In *Jackson* v. *Ligon, supra,* Tucker, P., said: "At law, in *every* case of dependent covenants, time is of the essence of the contract, since the plaintiff cannot recover without showing on his part, performance, or a readiness and ability to perform. But in equity, it is on general principles, otherwise. Although a vendor may not have complied with his contract to convey, or the vendee may not have paid his purchase money precisely at the stipulated time, equity will nevertheless, upon a proper case, enforce the contract, instead of permitting either party to insist on an arbitrary forfeiture of its benefits."

Profitt's willingness to have the property sold and its proceeds applied to the payment of the balance due on his purchase, contradicts the charge of backwardness. Had the vendors brought their suit for specific performance, it would have been entertained. And so, doubtless, had the vendee sued for similar relief and tendered the balance due. Or if, his contract being only partly performed, and he being unable to tender the residue of the purchase money, it could not be specifi-

cally executed, the court, in such a case, would decree compensation.   *Anthony* v. *Leftwich*, 3 Rand. 238.   But there arises here no question of specific performance or of compensation. The principle exactly applicable here, is that of implied or constructive trusts.   Flanagan and White purchased the property for Profitt.   The legal title was in them.   He had paid them, besides $500 *bonus*, $2,386.30 on the property, and still owed them $3,147.35.   He was the beneficial owner *pro tanto*.   As trustees they held the legal title for him charged with what he owed them.   *Floyd* v. *Harding*, 28 Gratt. 407.

When one holds the legal title, and another is beneficially entitled, in whole or in part, an implied or constructive trust arises in favor of the latter to the extent of his interest.   Such a trust is one which, without being expressed, is deducible from the nature of the transaction as a matter of intent, or which is superinduced upon the transaction by the operation of law as a matter of equity independently of the particular intention of the parties.   5 Field's Briefs, Title, Trusts, section 632; Hill on Trustees, 144.   It follows, therefore, that the fourth assignment is without merit.

V. "That there was error in decreeing exemption to the bankrupt, Profitt, it being the assignee's duty to assign him his exemption and report it to the bankrupt court to give the creditors opportunity to except."

If there was any error in this, it was a matter of distribution of the assets of the bankrupt, in which the appellants have no concern, even if the creditors could complain of it, which they seem not to have done.

VI. "That it was error to overrule the appellants' exception to the sufficiency of the evidence to establish the payments found by the master to have been made by Profitt to Flanagan and White."

On a careful examination the evidence appears to fully sustain the master's finding that Profitt was entitled to credit for the sum of $2,386.30, on account of his payments in money, rents, &c. The master probably knew the witnesses who testified in his presence. Besides, there were written receipts, and it is manifest that the master formed his conclusions with caution and deliberation. And the court below, after a few immaterial amendments, confirmed his report. The point mainly controverted by counsel in argument was the authority of Flanagan to receive the payments for White. But as to this the evidence is clear and definite. Profitt deposed that he proposed that Flanagan should buy the property in for him, and that he would pay Flanagan $500 *bonus*, and meet the payments as they fell due. White came up, and Flanagan restated the proposal, and asked White to join him, saying that "he (Flanagan) would attend to the whole matter, including the collecting." To this White assented, and Flanagan and White together made the purchase, paid the purchase money, and took the conveyance. This testimony of Profitt is uncontradicted. White admits that he received his half of the bonus. There is, then, nothing in this assignment.

VII. "That there was error in holding that appellants, Smith and Norman, are affected with notice of the claim of Profitt, and must take the property subject to that claim."

On this question the case hinges. As the legal title stood in Flanagan and White by a recorded deed conveying the property to them absolutely in fee, there certainly was no constructive notice to Smith and Norman of the claim of Profitt, his wife, his assignee, or his creditors. But, was there not actual notice? This is a question of fact; and it cannot be disguised that the evidence is conflicting. Profitt deposes, and so does Cochran, positively and circumstantially, that they told Smith all about the title, legal and equitable, before they purchased

and before they made the deferred payments, and about the relations of Flanagan and White as well as of Profitt, to the property, Cochran telling him how and to whom the purchase money would be payable, and warning him afterwards not to make the deferred payments until there was a settlement of accounts between Profitt and Flanagan and White. In their original bill, Smith and Norman aver that they were purchasers without notice. Cochran and Profitt, in their answers, deny that allegation of want of notice, and enter into the particulars of the information given to Smith. In his cross-bill, Cochran declares that Smith and Norman had notice of Profitt's equities when they purchased the property, and before they made the deferred payments. In their answer, Smith and Norman deny the averments, but admit that on one occasion Cochran did say something about his not making the deferred payments until Cochran had an interview with Flanagan. But, though Smith lived seven years after the suit was instituted, and seven months after Cochran's deposition was taken, yet he never gave his own testimony in the cause. And Flanagan, who, with Cochran's concurrence, made the sale to Smith and Norman, and was present on one occasion, as Cochran deposes, when the latter informed Smith, and though Flanagan filed an answer to the cross-bill, making but feeble opposition to the claim asserted by Profitt's assignee, &c., yet Flanagan also never testified in the cause. Norman did depose; but he only denied that Cochran had given *him*, or Smith *in his presence*, such information. The circumstances very strongly corroborate the evidence of Cochran and Profitt. These are, that Smith and Norman did a grocery business close by the Virginia House, and used the pump on the lot when Profitt took possession, put a new front to the house, fitted up a store-room and a bar-room, built a stable on the lot, and exercised all the rights of ownership over the property from March, 1869, to

September, 1871. These are undisputed facts. They must have been known to Smith and Norman; and were undoubtedly sufficient to put them on inquiry as to who was the actual owner of the property. The decided preponderance of evidence, direct and circumstantial, establishes that Smith and Norman are purchasers with notice of the claim of Profitt. and those claiming under him. Therefore, the circuit court did not err in decreeing that the appellants, Smith and Norman, take the property subject to that claim.

VIII. "That there was error in decreeing against the appellants, Smith and Norman, without first decreeing against Flanagan and White; and after having done that, in failing to decree over, against the latter in favor of the former."

This assignment is not well taken. The claim. of Profitt's. assignee, widow and creditors was primarily against the proceeds of the sale to Smith and Norman, and not against Flanagan and White. The latter, as the holders of the legal title, and trustees for their vendee, had, with his, or his assignee's consent, a perfect right to sell the property, and were only liable secondarily, to him for any unfaithfulness as such trustee. Had Smith and Norman not been affected with notice of Profitt's claim, they would have held the property free from any liability, so far as they had paid the purchase money before receiving such notice. But the payments they made in disregard of such notice are nullities, as to Profitt and those claiming under him.

The decree complained of is not a direct personal decree against Smith and Norman, but is a decree in the alternative. It orders that, unless within sixty days, they pay the sum of money, which, with the sum they had previously paid into court, was sufficient to satisfy the claims of Profitt and those claiming under him (except Cochran, as assignee in bankruptcy), then the trustee in the deed executed by them to

secure their bonds for the purchase money should sell the property on the terms prescribed by the trust deed.

As to the question of a decree over in favor of Smith and Norman against Flanagan and White, for compensation for the breach of their covenants of special warranty, contained in the deed of June, 18—, that is a matter which lies altogether between those parties, and does not in the least affect the validity of the decree complained of.

IX. "That there was error in hearing these causes on the answer of J. A. Profitt, and also in hearing them on the petition of Mrs. Mary J. Profitt, neither of which had been filed."

This representation is hardly borne out by the record. It is true that the causes were heard upon both the answer and the petition, but, as already intimated under another assignment, it is fairly inferable from the facts disclosed by the record that those papers were presented in court, and without objection, ordered to be filed, and that by mere clerical omission no note of the filing was made. Both pleadings are in the record, are of the same date, and in the cross-bill are mentioned as having been filed at a time when, had they not been filed, there was ample opportunity to file them; and in none of the answers is it denied that they had been filed, whilst the depositions show that both Profitt and his wife were represented at their taking by the same counsel.

X. "That there was error in failing to pass upon the demurrers after hearing them, and in not sustaining them."

In *Mathews* v. *Jenkins*, 80 Va. 463, this court, *per* Hinton, J., decided that when the court has adjudged the principles of the cause in favor of the plaintiff, the presumption is that it overruled the demurrer, though the record does not show what was done with it. The cross-bill to the demurrer to which this assignment has reference was not a bill for the specific performance of Profitt's contract with Flanagan and White, nor

for compensation for their non-performance of that contract, but merely for the enforcement of the rights of J. L. Cochran as the assignee in bankruptcy of J. A. Profitt, subject to the contingent right of dower of his wife and the liens of his judgment creditors under the constructive trust which grew out of that contract, its part performance, and the sale of the property to purchasers, with notice thereof. The record shows that the circuit court did decide upon the demurrer to the cross-bill, because it decided that "Cochran, as such assignee, had no right to his bankrupt's interest in the property, and must take nothing by his cross-bill and go out of court." The circuit court did not err in this respect.

Finding thus no error in the record prejudicial to the appellants, we come to the consideration, under the ninth rule of this court, of errors assigned by the appellee, Cochran, as the assignee in bankruptcy of J. A. Profitt. These are two in number.

I. "That there was error in holding that J. L. Cochran, as assignee in bankruptcy of J. A. Profitt, has no rights, as such assignee, in his bankrupt's interest in the property."

It has already been shown that Profitt had an interest in the proceeds of the sale of the property in question to Smith and Norman. It is not denied that Cochran was duly appointed such assignee. There is in the record, bearing date August 19, 1874, an assignment to him, as such assignee, by the register in bankruptcy of the District Court of the United States for the Western District of Virginia, wherein J. A. Profitt was adjudicated a bankrupt, of all the estate, real and personal, of said bankrupt, including all property of whatever kind, of which he was possessed or in which he was interested, or entitled to have, on the 31st day of August, 1871, together with all his deeds, books and papers relating thereto, excepting such property as is exempted from the operation of this assignment

by the provisions of the fourteenth section of the act of Congress, entitled, " An act to establish a uniform system of bankruptcy throughout the United States, approved March 2, 1867." That section provides expressly that "such assignment shall relate back to the commencement of the proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee." Bump on Bankruptcy (3d ed.), 282.

Flanagan and White held the property as trustees, and had a right to sell with the concurrence of Profitt or those entitled under him, and out of the proceeds to pay, first, the balance due themselves from Profitt, and, secondly, to turn the residue over to Profitt's assignee, to do which an order of the bankrupt court was by no means essential. Such being the case, and the ownership of those proceeds being in litigation, and Profitt and his assignee having been made parties to the suit, it is contrary to all the rules and principles of equitable jurisdiction and practice to hold that they could not assert their claims in that suit, either by cross-bill, or by answer treated as a cross-bill. Therefore, it is evident that the assignment is well made.

.II. "That there was error in · holding that J. L. Cochran's claim as Profitt's assignee in bankruptcy, was barred under the Federal statute of limitations by the lapse of two years from August 19th, 1874, the date of the assignment, and October 6th, 1876, the date of the institution of this suit.

In considering the appellant's eighth assignment of error, it has already been said that the claim of Profitt's assignee, &c., was primarily against the proceeds of the sale of the property to Smith and Norman. No cause of action, however, arose to recover those proceeds, until the bonds given by them, for the same, became respectively due and payable. The second bond fell due June 30th, 1875, and the last bond, June 30th, 1876.

Opinion.

The Federal statute of limitations requires that the assignee bring his suit against any person claiming an adverse interest, touching the property and rights of property (and under the decision of the Supreme Court of the United States in *Jenkins* v. *International Bank* 106 U. S. 571), "all debts" belonging to the bankrupt, within two years *from the time the cause of action accrued*. See second section of the Bankrupt Act of 1867; Bump on Bankruptcy, (3d Ed.), 253. It is manifest, then, that this suit having been (as the circuit court said) instituted on the 6th of October, 1876, two years had not elapsed since those two bonds became respectively due and the cause of action accrued. The court below made the mistake of computing the period of limitation from the date of the register's assignment to the assignee—that is, August 19th, 1874, to the date of the institution of the suit.

For these errors assigned by the appellee, J. L. Cochran, assignee as aforesaid, the decree of May 26th, 1885, might be reversed in his favor as such assignee. But as it is an interlocutory decree, it will be amended as to the two last mentioned errors, and affirmed with costs to the appellees, and the cause remanded to the circuit court of Albemarle county for further proceedings in conformity with the law and the views expressed in this opinion.

DECREE AMENDED AND AFFIRMED.