[No. 1331. Decided September 4, 1894.]

Philip Neis *et al.*, *Respondents*, v. Alexander S. Farquharson *et al.*, *Appellants*.

EQUITY — ACTION FOR ACCOUNTING BY AGENT — DECREE — EVIDENCE — DEATH OF PARTY — TESTIMONY OF ADVERSE PARTY — PRESENTATION OF CLAIMS TO ADMINISTRATOR.

Where an agent has been intrusted with the money of his principal for the purchase of hops, and, after purchasing hops, sells them on his own account and returns the money advanced by his principal, the latter is entitled to an accounting in equity, although no fraud on the part of the agent is alleged or proven.

The failure of the trial court to order a technical accounting is not a ground for reversal of the decree, when the court itself finds the amount due and such amount is not larger than the evidence warrants.

The death of a party to an action and the substitution of his legal representative, subsequent to the commencement of suit against him, will not render inadmissible in evidence the deposition of an adverse party in interest, when, at the time such deposition was taken, the testimony of the witness was competent.

Where a demand against a decedent's estate is merely for equitable relief, or for uncertain and unliquidated damages, it is not necessary to present it to the administrator for allowance or rejection prior to the institution of suit thereon.

The objection that there was no presentation of plaintiff's claim or demand to the administrator prior to suit cannot be urged for the first time in the appellate court.

*Appeal from Superior Court, Pierce County.*

*W. W. Likens,* and *Ira A. Town,* for appellants.

*H. F. Garretson,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—In the year 1883, the respondents, Philip Neis and Richard Brangon, partners under the firm name of Philip Neis & Co., instituted this action against William Wagner and Alexander S. Farquharson, partners doing business at Puyallup under the name and style of Wm. Wagner & Co., to compel the defendants to account for and pay over the proceeds of certain hops alleged to have been purchased by defendants for and on account of plaintiffs in the year 1882.

The complaint alleges that on or about June 7, 1882, the plaintiffs and defendants agreed that defendants should, during the year 1882, as agents of said plaintiffs, purchase hops in Washington Territory for the use of and on account of the plaintiffs, to be shipped to plaintiffs at San Francisco, California, and that plaintiffs should pay to said defendants a commission of one-half cent for each and every pound of hops so purchased, and that plaintiffs should from time to time make all necessary cash advances to enable the defendants to purchase said hops, and that said purchases should be made under such general instructions and directions as plaintiffs might give from time to time concerning the same.

It is further alleged therein, in substance, that the defendants, under said agreement, and as plaintiffs' agents,

did purchase from time to time during said year 1882, and prior to September 1, 1882, large quantities of hops for the use of and on account of plaintiffs, and under their directions and instructions from divers persons in Pierce county, and to enable them to make said purchases the plaintiffs furnished said defendants large sums of money, amounting to the sum of $577.76, which money was received by them and expended in paying cash advances on said hops to the several persons selling the same. That the plaintiffs have no knowledge or definite information as to the quantity of hops so purchased by said defendants under said agreement, but believe the same to exceed thirty thousand pounds, and they do not know the names of the different persons from whom they were so purchased. That the said hops so purchased, being then and there the property of the plaintiffs, came into the possession of the defendants, who thereafter sold the same, contrary to their said agreement, to divers persons to the plaintiffs unknown, and that the proceeds of said sales were paid to defendants, who now hold and possess the same for the use of plaintiffs. That plaintiffs have no knowledge or means of knowledge as to the amount so received by the defendants, but believe the same exceeds the sum of twenty thousand dollars. That plaintiffs have repeatedly demanded of defendants an accounting of their acts and doings as such agents, and of the quantity of hops so purchased under said agreement and from whom, and of the money paid defendants by plaintiffs for said cash advances, and of the amount of hops so received by them and the charges thereon, and also an account of the proceeds of said sales, but the defendants have refused and still refuse to comply with any of said demands, and that plaintiffs have offered from time to time to pay all commissions due to said defendants, and all personal advances or payments which may have been made by defendants in the purchase of said hops, and now offer to

pay the same whenever ascertained.    The answer of the defendants denies each and every allegation of the complaint, and sets up affirmatively that in the summer of 1882 the plaintiffs loaned defendants the sum of $577.76, and that thereafter, and on August 23, 1882, the defendants tendered the same to plaintiffs together with interest thereon at the rate of ten per cent. per annum, which the plaintiffs then and there refused and have ever since refused, and that defendants now are and ever since have been ready and willing to pay plaintiffs said sum of money. That at all times mentioned in the complaint, and prior thereto, defendants were engaged in doing a general business as merchants, and were also engaged in buying and selling hops on their own account and for others, which facts were at all times known to these plaintiffs.    That defendants while so engaged in business as aforesaid agreed to purchase hops for plaintiffs at such prices and in such lots and of such quality as plaintiffs might from time to time instruct them to purchase, but not otherwise.    That plaintiffs did from time to time instruct them to purchase hops of certain quality, in certain lots and at certain prices, but that defendants were unable to purchase any hops upon the terms, conditions and of the quality and at the prices to which they were limited by plaintiffs' said instructions, and that the plaintiffs during all the times mentioned in the complaint refused to pay the ruling and market price demanded for hops of the quality and in such lots as plaintiffs instructed them to purchase, and by reason thereof these defendants purchased no hops for or on account of plaintiffs.

The affirmative matters set forth in the answer were denied by the reply of plaintiffs, and upon the issues thus raised a trial was had, resulting in a decree for plaintiffs, and the defendants appealed.

No formal order was made by the trial court for an ac-

counting between the parties to the action, but a referee was appointed to take the testimony and report it to the court. The referee was appointed in the year 1884, but it seems he did not report and file the testimony taken by him until March, 1888. The final hearing was had upon the testimony so taken and reported by the referee, and the deposition of R. M. Brangon, one of the plaintiffs. This deposition was regularly taken before a notary public in San Francisco, California, on August 13 and 14, 1885, and the defendants were then and there represented by counsel who appeared and cross examined the witness fully in their behalf. Thereafter, and on August 6, 1886, Wm. Wagner, one of the defendants, died, intestate, and Christina Wagner, administratrix, and A. J. Miller, administrator, of his estate, were substituted as defendants, and the cause proceeded against them, and judgment was rendered against them and A. S. Farquharson in their representative capacities (the latter having been appointed administrator of the partnership estate of Wm. Wagner & Co.), on February 25, 1893.

Objection is made by the appellants to this judgment on the alleged ground that the plaintiffs failed to make out a cause for an accounting or any cause within the jurisdiction of a court of equity.

It is not disputed that the relation of principal and agent existed between the original parties to this action. In fact, such a relation is virtually admitted by the defendants' answer, the substance of which is above set forth. But the extent and character of the agency is disputed.

The testimony of the defendant Farquharson shows that during the summer of 1882, and while their agreement with the respondents was in full force, the firm of Wagner & Co. purchased hops from divers persons for themselves, but he further says they were unable to purchase any for the respondents owing to the conditions imposed upon them

as to price, quality and quantity. The record discloses, however, that the firm of Wm. Wagner & Co. notified the respondents by letter, on one occasion at least, that they had purchased a certain quantity of hops, but neither in that nor in any other communication during the existence of the agency were the respondents informed that the purchase was not made on their account, but on account of Wagner & Co.

We are convinced from the evidence, as a whole, that the respondents had good reason to believe, and did believe, that Wagner & Co. were buying hops on their account exclusively. Indeed, they were not even informed to the contrary by the letter of August 9, 1882, by which they were notified that Wagner & Co. would no longer act as their agents. In that letter Wagner & Co. say, "We feel that our connection with your house has not been a source of much profit to us this year." If they, up to that time, had purchased no hops for the respondents, it is reasonable to suppose they would then have plainly said so. And, in that event, there would have been no occasion to mention the subject of "profit" at all.

An examination of all of the evidence in the record leads us to the conclusion that the appellants ought in equity to account to the respondents for the proceeds of the hops purchased by Wagner & Co. while acting as the agents of the respondents, and subsequently sold by them without the consent of their principals. And this being so, it follows that, under the law existing at the time of the trial, as often construed by this court, a finding of facts by the trial court was not a necessary prerequisite to the validity of the decree, and therefore the omission of such finding is no ground for its reversal.

It is earnestly insisted by the learned counsel for the appellants that inasmuch as no fraud is alleged or proven, and no money of the plaintiffs is shown to have been used

in paying the purchase price of the hops, plaintiffs are not in a situation to claim equitable relief, their remedy being exclusively an action at law for damages for breach of contract.     But we think this contention of counsel cannot be sustained.     As a matter of fact the defendants had money of the plaintiffs in their hands which they might have used if they did not, and which the plaintiffs expected they would use in part payment for hops.     Equity will not permit a party who undertakes to act for another in any given matter to act for himself in the same matter, or place himself in a position where his own personal interests conflict with the interest of his employer.  2 Pomeroy, Eq. Jur., § 959. And this is just what Wagner & Co. did in this instance.

The rule is well stated in *Dutton v. Willner*, 52 N. Y. 312, in which case the court said:

"It is a well settled and salutary rule that 'a person who undertakes to act for another in any matter shall not, in the same matter, act for himself.'   .   .   .   If the agent make a profit out of the transaction he is bound to account for it, though made without the knowledge or authority of the principal, and without risk or expense to him."

In this case the quantity of hops purchased and the price paid, as well as the amount received for them by Wagner & Co., were peculiarly within their own knowledge.     And, under such circumstances, the jurisdiction of equity attaches. 3 Pomeroy, Eq. Jur., § 1420, and note 1.

Nor do we think that the failure of the court below to order a technical accounting is proof that, in the opinion of the court, the plaintiffs were not entitled to an accounting at all.     The statute prescribes no method by which an account shall be taken or stated in actions like this, and a mere departure from the recognized procedure under the former practice in chancery is not alone a sufficient ground for the reversal of the judgment.     The court itself found the amount due plaintiffs, and, if the amount so found was

not larger than the evidence warranted, the defendants certainly have no legal cause of complaint.

It is next urged that the court erred in admitting in evidence the deposition of Brangon.   It is claimed that this deposition, though competent when taken, was incompetent at the time of the final hearing of the cause, by reason of the provisions of § 389 of the 1881 Code of Washington, which are as follows:

"*Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased or insane person, or as guardian of a minor under the age of fourteen years, then a party in interest, or to the record, shall not be permitted to testify in his own behalf."

This contention on the part of the appellants is based upon the alleged legal proposition that the competency of a witness whose deposition is offered in evidence must be determined by the law in force at the time of the trial and not by the law existing when the deposition was taken.   In support of this proposition appellants cite Weeks on Depositions, § 413; *Mitchell v. Haggenmeyer,* 51 Cal. 108; *Fielden v. Lahens,* 6 Abb. Pr. (N. S.) 341, and 5 Am. and Eng. Enc. Law, 582.   And they insist that, tested by these authorities, the deposition was inadmissible.

Had the action been brought against Wagner's administrators in the first instance, or had Brangon testified after they were substituted as parties defendant, it seems clear that his testimony would have been incompetent under the statute.   But it will be remembered that when he testified there were no administrators in the case, no one was suing or defending in a representative capacity, and in such cases only is a party in interest or to he record prevented from testifying.   It would, in our opinion, be extremely unreasonable to hold that Brangon did not "testify" until his deposition was read at the hearing.   He testified at the time his deposition was taken, and when he was a

competent witness.   The statutory prohibition is to *testi-fying* under certain specified circumstances.   And it makes
the time of testifying the test of competency, rather than
the time of the hearing.   If at that time the witness is
competent, the prohibition does not apply.   We think
there was no error in admitting the deposition in evidence.
And, as was said in *Marlatt v. Warwick*, 18 N. J. Eq. 108:

"This is in accordance with the well settled rule of evi-
dence, both at law and in equity, that the objection to the
witness must exist at the time of his being sworn; if a wit-
ness should, after being examined, die, become interested
in the suit, or be convicted of crime, his testimony would
not be rejected on that account."

See, also, *Ford v. Grieshaber*, 39 Tenn. 435; *Cameron v.
Cameron*, 15 Wis. 6; *Smith's Ex'x v. Profitt's Adm'r*, 82
Va. 832 (1 S. E. 67); *Keran v. Trice's Ex'rs*, 75 Va. 690.

In *Comins v. Hetfield*, 80 N. Y. 261, it was held that the
death of the defendant was no ground for striking out that
portion of plaintiff's testimony given before the death oc-
curred.   And in *Sheidley v. Aultman*, 18 Fed. 666, it
was said that it is the rule in chancery that if the testi-
mony was competent when the deposition was taken and
filed it remains competent, and the court there held that
this rule of equity was not changed by § 858 of the Re-
vised Statutes of the United States, which is a statute
similar in its object and purpose to ours, but that the ad-
ministrator merely takes up the case as it stood when the
intestate party died.   And to the same effect is the case
of *Vattier v. Hinde*, 7 Pet. 252, in which Chief Justice
MARSHALL said:

"The new parties plaintiffs are the representatives of
Belinda Hinde, an original plaintiff, and the proceedings
are revived in their names by order of the court on their
bill of revivor.   Under such circumstances the settled
practice is to use all the testimony which might have been
used had no abatement occurred."

See, also, 5 Am. and Eng. Enc. Law, 610.

It is further contended that the judgment must be reversed for the reason that there is no proof that plaintiffs ever presented their demand or claim to the administrators for their allowance or rejection, as they were required to do by § 988 of the Code of Procedure. But this contention cannot prevail. In the first place it is questionable, to say the least, whether plaintiffs' demand was such a claim as is contemplated by our statute. The statute (§ 980) provides that "every claim presented to the administrator shall be supported by the affidavit of the claimant that the *amount* is justly due, that no payments have been made thereon, and that there are no offsets to the same to the knowledge of the claimant." It is difficult to see how the plaintiffs could have made such an affidavit. Their action was instituted for the very purpose of discovering and ascertaining the "amount" of their claim, which they alleged in their complaint they did not know, and had no means of knowing except by an accounting.

Where the demand is merely for equitable relief or for uncertain and unliquidated damages it has been held, and not without reason, that it is not necessary to present it to the administrator for allowance or rejection, "for it is obvious that in all such cases the exhibition would be but an idle ceremony." 2 Wœrner, Adm'n, § 386; *Evans, Adm'r, v. Hardeman,* 15 Tex. 480 ; *Toulouse v. Burkett,* 2 Idaho, 170 (10 Pac. 26); *Thompson v. Reno Savings Bank,* 19 Nev. 242 (3 Am. St. Rep. 883).

In the second place, the appellants are not in a position to urge the objection in this court that there was no presentation of plaintiffs' claim or demand to the administrator. The record does not show that the objection was made in the court below, and it cannot be taken for the first time in the appellate court. *Coleman v. Woodworth,* 28 Cal. 568; *Bank of Stockton v. Howland,* 42 Cal. 129; *Drake v. Foster,* 52 Cal. 225.

Lastly, it is claimed that the evidence is insufficient to establish a right in plaintiffs to a recovery in this action. But in this view we are unable to concur.     There is a conflict in the evidence on some material points, but the judgment cannot be disturbed on that account.

The judgment must be affirmed, and it so ordered.

HOYT, STILES and SCOTT, JJ., concur.

DUNBAR, C. J., dissents.