I am convinced that decree for specific performance cannot properly be made in this suit.
I am satisfied that, on the day named in the contract for complainant to pay the purchase price, his failure to do so was because of his determination to abandon his contract of purchase, and I am also convinced that at that time, and also on the following Monday (June 4th, 1923), he so informed defendant. Also, it is reasonably certain that until the receipt of the letter of August 21st, 1923, demanding performance, defendant understood and was justified in understanding from complainant's statements and attitude *Page 457 
that he had abandoned the contract. I find nothing that affords complainant a shadow of excuse or justification in thus determining to withdraw from the contract at the time it was his duty to perform his obligations under it and more than two months thereafter demanding performance. I am unable to accept certain reasons assigned by way of justification.
While the stipulated time for payment by the vendee is not ordinarily deemed of the essence of a contract for the sale of real estate, it may yet be, though not strictly essential, an element sufficiently material in the circumstances of a given case to justify a refusal of the remedy here sought if complainant's delay is found to have been inexcusable and unjustified. In the language of Professor Pomeroy touching specific performance of contracts in which time is not of the essence, but is yet material: "The delay, whether long or short, must be accounted for and explained by facts and circumstances which are regarded by courts of equity as sufficient to justify and excuse it." Pom. Cont. (Spec. Perf.) § 402. After the purchaser has fully determined he will not complete his purchase a contract of that nature should not be considered as automatically converted into an option of purchase in his behalf to enable him to change his mind at some future time; laches may afford a bar to relief to the same extent as in other equitable remedies. This is the spirit of the language often used to the effect that a complainant must show himself ready, desirous, prompt and eager to perform the contract on his part. Meidling
v. Trefz, 48 N.J. Eq. 638, 644; Pom. Cont. § 403.
It matters little whether the contract here sought to be enforced be deemed one in which time for performance is inherently of its essence or merely material; it is clearly a contract in which the time named for performance cannot be regarded as immaterial. By this contract defendant agrees to sell to complainant certain real estate, together with a moving-picture business then owned and conducted by defendant in the building erected on the land, including the good-will and all personal property in the building and *Page 458 
connected with the business. The contract was to be performed on a day specified therein, at which time $13,000 in cash was to be paid by complainant to defendant as the final cash payment. Defendant was anxious to perform on the day named and tendered complete performance on his part, but, as already stated, was informed by complainant that he had determined not to purchase. Believing complainant had abandoned performance, defendant continued in possession and has continued to operate the theatre as his own to this time. The evidence further discloses that at the time the contract was made defendant did not desire to sell, but was impelled to agree to sell at a low price, which price he regarded as a sacrifice, because of pressing financial obligations which he was compelled to meet in a building enterprise he had undertaken; it was the necessity to procure cash to meet these obligations that induced defendant to agree to sell to complainant at the price determined upon. As defendant expressed it, it was to save him from bankruptcy. The evidence further discloses that, when complainant failed to perform, defendant continued the business, having then made financial adjustments involving sacrifices; that the period between complainant's default and his subsequent demand for performance was what is known as the "lean" period for business of that nature; that in the operation of the business after complainant's default the personal services of defendant and his son were contributed to make the business successful, and various and necessary contracts were made and obligations incurred and met in the ordinary course of operations. All this was an obvious necessity between the time for performance, when complainant determined not to perform, and so informed defendant, and the subsequent time, over two months later, when he demanded performance; and this necessity was equally obvious to complainant when the contract was made and when he determined not to perform. The hazard of operation was thus forced on defendant by complainant's default; had such operation been unsuccessful it reasonably may be assumed that complainant's determination not to perform *Page 459 
would have remained unchanged. It seems impossible to determine that in a contract of this nature, involving the sale of a going business, and in which these obvious consequences of a default in prompt performance upon the part of complainant exist, the time agreed upon when payment is to be made and the business is to be turned over to complainant, can be considered an immaterial element of the contract. Indeed, performance by the purchaser on that day, or reasonably soon thereafter, would more nearly appear to be of the very essence of such a contract. A decree for performance would necessarily involve an accounting during the period of defendant's operation of the business since complainant's default, to determine what charges and allowances growing out of such management and operation of the business should be equitable and just, a difficult, if not an impossible, undertaking, and a task imposed by complainant's default.
Upon the return of the deposit money the bill will be dismissed.