# Richmond.

## J. M. MORRIS v. JENNIE K. HARROP, ET ALS.

March 13, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Robert A. Ryland* and *H. W. Dudley*, for the appellant.

*Ball & Douglas* and *Carl Budwesky*, for the appellees.

HOLT, J., delivered the opinion of the court.

Prior to June 17, 1924, Mrs. Jennie K. Harrop was the owner of certain suburban property in Arlington county, described as "lot No. 15D of the resubdivision of the lots numbered 15 and 16 of Chas. S. Bradley's subdivision of the part of Woodmont." On that date she conveyed it to C. S. Taylor Burke, trustee, in trust to secure her note for $4,000.00. This note in due course passed to The Mortgage Security Company of America. It was not paid at maturity. The trustee was requested to sell and proceeded to do so, on the premises, and on August 20, 1927. Among those there present was a Mr. Woolls, who represented himself, Mr. Fernand Pettit, who represented the mortgage

company, Mr. Thomas C. Hendricks, who represented the owner, Mrs. Harrop, Mr. Burke, the trustee, and the plaintiff, Mr. Morris. Mr. Woolls bid $4,525.00. Mr. Morris bid $4,550.00 and Mr. Pettit, who was bidding for his company, made the final offer of $4,-575.00. Just before or just after the Pettit bid Mr. Hendricks came forward with $500.00, and sought to have the sale postponed.

There was a conference between all of those present. The trustee declined to accede to this request, the property was called off to Mr. Pettit, the last and highest bidder, and an auctioneer's memorandum of sale to him was then made, but contemporaneously this memorandum was written by Mr. Burke, signed by Mr. Pettit, and delivered to Mr. Hendricks: "Received of Thos. C. Hendricks, agent of Mrs. Jennie K. Harrop, $500.00, deposited on house and lot known as lot 15D of the resubdivision of lots 15 and 16 of Woodmont subdivision, on the purchase price of $4,575.00; balance of $4,075.00 to be paid on or before September 9, 1927, with interest at six per cent on the balance due, with expenses added to that."

To this writing Mr. Morris was not a party and there is nothing there to indicate that he was in any wise interested in its subject matter.

At the same time there was an agreement between all of them, in substance to the effect that if Mr. Hendricks did not succeed in raising the money necessary to redeem this property, as had been provided for, then and in that event Mr. Pettit was to convey it or have it conveyed to Mr. Morris, who on his part was to pay $4,550.00, the amount of his bid.

Mr. Morris was in actual possession and had been from about the first of the preceding May, under an

oral contract of purchase at the price of $8,500.00. He had not fulfilled this contract but had paid only $45.00 thereon.

After the sale the owner promptly undertook to secure a loan that she might pay off her debts to the mortgage company. The Atlantic Life Insurance Company was willing to provide this fund but there was some delay for which she was not responsible and the necessary arrangements were not completed until after the expiration of the twenty-day period.

Mrs. Harrop was an elderly lady and at the suggestion of that company conveyed by deed of gift this property to her daughter, Marion T. Harrop, to the end that the loan might be made to a younger person. This deed of gift bears date August 31, 1927.

By deed of date, September 1, 1927, Marion T. Harrop conveyed it to Alexander Parker and to Courtland H. Davis, trustees, in trust to secure $3,750.00. For some reason this deed antedates the actual making of the loan. On September 22, 1927, Marion T. Harrop again conveyed it to Robinson Moncure and Courtland H. Davis in trust to secure $1,000.00.

On October 8, 1927, Burke, trustee, executed a release of the liens secured under his deed.

The stipulation appears in the record: "It is agreed by counsel for the complainant and counsel for the defendants that the present holders of said notes had no notice of the fact that the real estate involved in these proceedings had been advertised for sale at public auction under and by virtue of the deed of trust upon said property, recorded among the land records of said county in Deed Book 207, page 126."

At the expiration of the twenty days plaintiff appeared and asked that he be permitted to pay the

$4,550.00, the amount of his bid, and that a conveyance be made to him. This request Mr. Pettit refused and as a reason therefor, said: "I did not consider that I had a definite agreement that bound me to the twenty days. I felt it my privilege to protect the owner and to give an opportunity to her to come into the property again if the necessary arrangement could be made."

There was a decree for the defendant. In the petition for appeal is this statement: "This was a bill in chancery brought by your petitioner against the above named defendants to have declared null and void a conveyance by Jennie K. Harrop of the hereinafter described property to Marion T. Harrop and to have declared null and void two (2) certain deeds of trust hereinafter set out in so far as said deeds of trust affect your petitioner, and by virtue of a trustee's sale of the said property, at which said sale your petitioner claims to be the purchaser, to secure a decree of the court directing a conveyance of said property to your petitioner upon his paying purchase prices thereof."

The bill itself contains this prayer: "That so far as the interests of Marion T. Harrop in the aforesaid property are concerned that the aforesaid conveyance from Jennie J. Harrop to Marion T. Harrop be declared null and void and that the said Marion T. Harrop be required to convey the aforesaid property to your complainant subject to the two deeds of trust mentioned in paragraph five of this bill of complaint, or if the court deem it proper that the aforesaid conveyance from Jennie K. Harrop to Marion T. Harrop be set aside as null and void and the aforesaid deed of trust from Marion T. Harrop to Alexander Parker and Courtland H. Davis, trustees, set aside as null and void and the aforesaid deed of trust from Marion T. Harrop to Robinson Moncure and Courtland H. Davis,

trustees, set aside as null and void and the said C. S. Taylor Burke, trustee, be required to convey the aforesaid property to your complainant under the terms of your complainant's purchase of the said property at the aforesaid auction sale."

It will be seen that this statement in the petition for appeal goes somewhat beyond the prayer in the bill. At the hearing before us it was conceded that the second trust deed was valid. All of this is unimportant for plaintiff can in no event prevail and for a number of reasons.

First: There is no written evidence of his contract of purchase, such as is required by the statute of frauds. Code, section 5561. The auctioneer's memorandum showed that the sale was made to Pettit and neither Pettit, Hendricks nor Burke represented him. Burke was trustee; Hendricks represented the owner, and Pettit the mortgage company, and conceding that these gentlemen agreed that in certain contingencies a deed should be made to Morris it remains an oral contract for the purchase of land.

The written memorandum of August 20th was for the benefit of the owner. Mr. Morris did not sign it and his name is not there mentioned.

Second: The right to specific performance is not an absolute one but rests in the judicial discretion of the chancellor, and will not be ordered when it would be inequitable. Equity is never alert to enforce hard bargains. (*Walker* v. *Henderson*, 151 Va. 913, 145 S. E. 311), and the parties must be placed in a situation which does not lie in compensation. *Wright* v. *Pucket*, 22 Gratt. (63 Va.) 370; *Frizzell* v. *Frizzell*, 149 Va. 815, 141 S. E. 868. Here the condition of the parties has not changed. Morris stands exactly where he stood before his purchase. Moreover, he who comes into

equity must come with clean hands. This property is concededly worth very much more than $4,550.00. Morris himself had agreed to pay $8,500.00 for it. This he failed and refused to do and is now asking that sale be confirmed to him at $4,550.00. He ignores one oral contract to purchase and claims under another.

Certainly it is clear that he would have no right whatever on which to base a claim had Mrs. Harrop paid her loan to the mortgage company within the twenty days. And it is likewise clear that he has no standing if he prevented the closing of the transaction within that time. Mr. Burke in a letter of September 17, 1927, writes that he had been informed by the mortgage company that Mr. Morris who was in possession refused to permit an examination of the property by appraisers and Mr. Hendricks has testified to the same effect. It is true that this is denied by Mr. Morris and by his brother-in-law who lived with him. When an appraisal was made the loan followed and it is not reasonable to suppose that this charge was made up out of the whole cloth. When we remember that the loan did in fact promptly follow an appraisal, together with Mr. Morris' attitude in the case and his attempt to buy at about half of what he had theretofore agreed to pay, we are justified in deciding this conflict against him.

■ Third: Again the contract of August 20th was not one in which time was of the essence. Mr. Pettit who made this did not think it was. His attitude and that of his company was eminently fair. They did not want to purchase the property at less than it was worth. All that they asked was that their debt be paid and to that end they agreed to give the owner twenty days in which to make the necessary arrangements. The extension was for her benefit and was

intended to give to her a reasonable time within which to redeem. Mr. Morris was entitled to no special consideration and his rights, such as they were, came into operation when hers ceased. Her contract was merely one for the payment of money by a certain date. If payment were delayed for a few days no harm was done. The very nature of the contract would indicate that a reasonable extension of the time might have been in contemplation of the parties, certainly in contemplation of them all except Mr. Morris.

"In equity, as a rule, time will not be regarded as of the essence of the contract unless it affirmatively appears that the parties regarded time as an essential element of their bargain. But although time is not made of the essence of the contract by express stipulation, it may nevertheless be held to have been so intended from the nature of the contract." 13 C. J. 686.

"In contracts for the sale of land equity has established the rule that unless expressly made so by the terms of the contract or by special circumstances, time is not essential." *Williston on Contracts*, section 852; *Stern* v. *Shapiro*, 138 Md. 615, 114 Atl. 587; *Fox* v. *Fridrich*, 96 N. J. Eq. 456, 126 Atl. 535; *Foster* v. *Coffey*, 71 Colo. 171, 204 Pac. 900; *Alcazar Amusement Co.* v. *Mudd and Colley Amusement Co.*, 204 Ala. 509, 86 So. 209; *Fannin* v. *Devine*, 294 Ill. 597, 128 N. E. 745; *Preferred Underwriters, Inc.* v. *New York, N. H. & H. R. Co.*, 243 Mass. 457, 137 N. E. 590.

"As a rule, the courts will not infer that the parties intended to make time the essence of the contract for the sale of land, from the mere appointment of a day for the delivery of a deed, or the payment of the price. The intention must be unequivocally expressed or it must appear from the fluctuating, un-

certain or perishable nature of the commodity. It is a general rule that language which admits of a milder interpretation, shall not be so construed as to work a forfeiture. In a case where the first installment was to be paid October 1, 1848, when the title was to be conveyed, the court said: 'This is nothing more than a naked covenant to pay money at a particular day, which has never been held to mean that time is the essence of the contract, for the plain reason that it admits of adequate compensation ascertained by law in the shape of damages.' 1 *Smith's Lead. Cas.*, 115, 136; 2 *Lead. Cas. in Eq.*, 1129; *Jackson* v. *Ligon*, 3 Leigh [30 Va.] 187." *Smith's Ex'x, et al.*, v. *Profitt's Adm'r, et al.*, 82 Va. 832, 1 S. E. 67, 78; *Selden* v. *Camp*, 95 Va. 527, 28 S. E. 877; *Reckett* v. *Kornegay*, 150 Va. 636, 134 S. E. 296.

When this matter is one of doubt the same rules are to be observed that govern the construction of contracts on other controverted points. We look first to the language used and when that is not conclusive we look to the circumstances which led to their execution. Here the extension was a matter of grace. Mr. Pettit might have demanded that a deed be made to him at once. Indulgence was given to the owner that her interest might not be sacrificed. All that was in substance expected of her was that she should redeem promptly if at all, and it was of no importance to the loan company if this redemption be made in twenty days or in twenty-five days. The equities are with her and against Mr. Morris.

The decree appealed from should be affirmed, and it is so ordered.

*Affirmed.*