**BIZMARK, INC., et al., Plaintiffs,**

v.

**INDUSTRIAL GAS & SUPPLY CO., INC., et al., Defendants.**

No. 2:04CV00109.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 2, 2005.

[redacted]

Joe H. Roberts, Joe H. Roberts, P.C., Wise, Virginia, for Plaintiffs.

J. Scott Sexton and Ryan C. Berry, Gentry Locke Rakes & Moore, L.L.P., Roanoke, Virginia, for Defendant Industrial Gas & Supply Co., Inc.

Wade W. Massie, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant David Luther.

## OPINION AND ORDER

JONES, Chief Judge.

In this action for the balance of the deferred purchase price under a commercial asset purchase agreement, I find that the applicable statutes of limitations bar certain of the amounts claimed. In addition, I find that the notice condition of an indemnity clause in the agreement is not applicable.

### I

Bizmark, Inc. ("Bizmark"), Roy L. Wells, Jr., Roger N. Wells, Industrial Gas & Supply, Inc. ("Industrial"), and David Luther ("Luther") entered into an Asset Purchase Agreement dated June 30, 1995 ("Agreement"). By the terms of the Agreement, Bizmark promised to sell to Industrial certain of its assets (primarily gas cylinders) used in Bizmark's welding and industrial gas business. Roy Wells and Roger Wells, the shareholders of Bizmark, agreed not to operate a competing business within a certain geographical area for a period of five years, for which covenant they were to be paid a separate amount. David Luther, the president of Industrial, signed the Agreement as "Guarantor" and agreed to be "equally liable with Buyer on all obligations and duties owed to Seller and Shareholder." (Agreement ¶ 15(c)(ii)(F).)

The price for the assets purchased was $358,383, designated as the "Base Pur-

chase Price," of which amount $98,500 was paid at the closing on July 12, 1995. The balance of $259,883, called the "Deferred Purchase Price," was evidenced by a separate nonnegotiable promissory note dated July 12, 1995, made by Industrial and payable to Bizmark (the "Note"). The Agreement and the Note provided that the Deferred Purchase Price was to be paid in sixty equal consecutive monthly installments of principal and interest, such installments to begin on August 12, 1995. The interest rate was fixed at eight and one-half percent per annum.

The Agreement provided that the Deferred Purchase Price was subject to an adjustment up or down, effective October 1, 1995, based on an inventory of the cylinders purchased. The Note similarly provided that "the principal amount owed on this Note shall be adjusted, if applicable, effective October 1, 1995, if any adjustments are required to the Base Purchase Price as provided in the Asset Purchase Agreement."

On May 27, 2004, Bizmark and its shareholders filed suit in state court against Industrial and Luther, contending that while Industrial had made sixty consecutive monthly payments and the first eight such payments had been in the amount of $5,332.02 each, the remaining fifty-two had been only in the amount of $815.66 each. The plaintiffs thus sought the difference between the amounts paid and the unadjusted Deferred Purchase Price.[1]

The defendants removed the action to this court, based on its diversity jurisdiction. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp.2004). The defendants have filed Motions to Dismiss, which have been briefed and argued and are ripe for decision.

Bizmark contends that the reduction in the monthly installment payment first occurred in March of 1996 because of a claimed adjustment by Industrial for cylinders not included in inventory. Bizmark asserts that such a reduction was not timely, having occurred after October 1, 1995. Bizmark alternatively argues that an adjustment for certain of the cylinders was improper because the cylinders were not subject to a third-party lien, as contended by Industrial. Based on its main argument, Bizmark claims Industrial has made a total underpayment of $185,846, and under its alternative argument Bizmark claims $131,605.03.

## II

The defendants move to dismiss the claims against them on the grounds that those claims are barred by the applicable statutes of limitations, and that the plaintiffs failed to comply with a condition precedent in the parties' contract.

## A

In their Motions to Dismiss, Industrial and Luther first rely on statutes of limitations. The parties are agreed that as to the claim against Industrial, the six-year period of limitations contained in Article 3 of Virginia's Uniform Commercial Code applies. *See* Va.Code Ann. § 8.3A–118 (Michie 2001).[2] Luther contends that since he did not sign the promissory note,

---

1. The plaintiffs also claimed that they were due an amount for keeping certain cylinders purchased but not picked up by the buyer after the sale. However, they have conceded that such claim should be dismissed. They also concede that the shareholders are not proper parties to this action and any claims asserted by them should be dismissed.

2. While the note is nonnegotiable, Virginia's version of the UCC applies the statute of limitations to both negotiable and nonnegotiable notes. *See* Va.Code Ann. § 8.3A–118(e). The parties agree that Virginia substantive law applies to this controversy.

the four-year period contained in the UCC Sales Article applies to him. *See* Va.Code Ann. § 8.2–725 (Michie 2001).

■ It is settled that upon the failure to make an installment payment, a cause of action for that installment accrues immediately and the statute of limitations begins to run. This has long been the rule in Virginia, *Williams v. Matthews,* 103 Va. 180, 48 S.E. 861, 862 (1904), and elsewhere, *see Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.,* 522 U.S. 192, 208, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (noting that "the standard rule for installment obligations" is that a new cause of action, carrying its own limitations period, "arises from the date each payment is missed").

■ The defendants contend that the cause of action on the entire contractual obligation accrued in March of 1996, since that is when Bizmark asserts that Industrial first reduced the installment payments. However, it is equally settled "that the statute of limitations runs from the time of actual performance and not the time of the anticipatory repudiation." *High Knob Assocs. v. Douglas,* 249 Va. 478, 457 S.E.2d 349, 354 (1995). While Bizmark may have had the option of pursuing a remedy at the time of Industrial's first adjustment of the Deferred Purchase Price, it was not obligated to do so, and could await the failure to perform as to each installment payment. *See Heirs of Roberts v. Coal Processing Corp.,* 235 Va. 556, 369 S.E.2d 188, 190 (1988).

■ Luther contends that he is entitled to the shorter period of limitations applicable to the sale of goods, because he was not a "party" to the promissory note. I agree. The applicable statute provides that "an action to enforce the obligation of a *party* to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note." Va.Code Ann. § 8.3A–118(a) (Michie 2001) (emphasis added). A "party" in this context "means a party to an instrument," Va.Code Ann. § 8.3A–103(a)(8) (Michie 2001), connoting a person who has signed the instrument. *See* 6B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 3–103:19R (2004). Luther was not a party to the instrument and thus the shorter four-year period applies to him.[3]

Accordingly, as to the statute of limitations defense, I hold that any claim against Industrial for amounts covered by installments of the Deferred Purchase Price due prior to six years before May 27, 2004, is barred. In addition, any claim against Luther for amounts covered by installments of the Deferred Purchase Price due prior to four years before May 27, 2004, is barred.

**B**

The defendants also contend that Bizmark's action is barred because Bizmark failed to comply with a condition precedent by giving notice within thirty days of the events giving rise to the claim.

Paragraph 15 of the Agreement provides, in pertinent part, as follows:

(c) In the event of the breach of any warranty, covenant or agreement herein set out or the failure to perform any of the provisions of this Agreement by either Party, the indemnity rights of Buyer, Seller and Shareholders are subject to the following conditions:

---

**3.** Virginia has a five-year period of limitations for written contracts generally, but if the action is for breach of a contract for the sale of goods, the shorter UCC period applies. *See* Va.Code Ann. § 8.01–246 (Michie 2000). The Agreement in this case involved the sale of goods. *See* Va.Code Ann. § 8.2–105(1) (Michie 2001) (defining "goods").

(i) Any claim or loss of a Party (herein Offended Party) subject to indemnity from the other Party (herein Offending Party) shall be communicated in writing to the Offending Party within thirty (30) days after the event giving rise to the claim or loss is known by the Offended Party.

(Agreement ¶ 15(c)(i).)

The defendants contend that pursuant to this provision of the Agreement, notice of nonpayment was a condition precedent to their obligation to pay the Deferred Purchase Price and that because there is no allegation that timely notice was given, the Motions to Dismiss must be granted. On the other hand, Bizmark contends that this notice requirement is plainly limited to indemnity claims, and not claims between the contracting parties, as here.[4]

■ While it is correct that in Virginia the satisfaction of a condition precedent must be pleaded as well as proved by the plaintiff, *see Lerner v. Gudelsky Co.,* 230 Va. 124, 334 S.E.2d 579, 584 (1985), federal pleading rules apply to the present case. Federal Rule of Civil Procedure 9(c) describes the *manner* of pleading the performance or occurrence of conditions precedent, but the rule does not require that any such condition be pled. *See Kiernan v. Zurich Cos.,* 150 F.3d 1120, 1123–24 (9th Cir.1998).

■ In any event, I agree with Bizmark that the condition precedent here is inapplicable. The notice provision is limited to "indemnity rights" and claims or losses "subject to indemnity." The principal meaning of "indemnify" is "[t]o reimburse (another) for a loss suffered because of a third party's act or default" or "to promise to reimburse (another) for such a loss." Black's Law Dictionary 772 (7th ed.1999). The duty of indemnity arises when "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other." Restatement (First) of Restitution § 76 (1937). I am obligated to construe this contractual provision according to its plain meaning and doing so, I hold that it does not apply to the obligation to pay the Deferred Purchase Price.[5]

### III

For the foregoing reasons, it is **OR-DERED** as follows:

1. The Motions to Dismiss are granted in part and denied in part;

2. Any claim against defendant Industrial Gas & Supply Co., Inc. for amounts covered by installments of the Deferred Purchase Price due prior to six years before May 27, 2004, is dismissed;

3. Any claim against defendant David Luther for amounts covered by installments of the Deferred Purchase Price due prior to four years before May 27, 2004, is dismissed;

---

**4.** In oral argument, counsel for Bizmark asserted that in fact, Industrial was aware at the time that Bizmark disputed any adjustment to the Deferred Purchase Price.

**5.** The Supreme Court of Virginia has allowed reimbursement of attorneys' fees under an indemnity clause where the attorneys' fees were incurred in a suit between the parties to the contract and not as a result of a third party's claim. *See Chesapeake & Potomac Tel. Co. of Va. v. Sisson & Ryan, Inc.,* 234 Va. 492, 362 S.E.2d 723, 728–29 (1987); *see also Am. Sales Corp. v. Adventure Travel, Inc.,* 867 F.Supp. 378, 379–80 (E.D.Va.1994). However, even when it arises in a suit between the contracting parties, an attorney's fee is an expense from a third party—the attorney—which should be borne by another under the indemnity clause. Here there is no third party who caused loss to Bizmark; Bizmark simply claims that Industrial has not paid the Deferred Purchase Price as it promised in the Agreement.

4. Any claim for keeping cylinders is dismissed;

5. Any claims by plaintiffs Roy L. Wells, Jr., and Roger N. Wells are dismissed and such plaintiffs are dismissed as parties to this action; and

6. The Motions to Dismiss are otherwise denied.