**BIZMARK, INC., Plaintiff,**

v.

**AIR PRODUCTS, INC., Defendant.**

No. CIV.A. 2:04CV00109.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 29, 2006.

Joseph Harvey Roberts, Joe H. Roberts, P.C., Wise, VA, for Plaintiff.

J. Scott Sexton, Ryan Christopher Berry, Gentry Locke Rakes & Moore, Roanoke, VA, for Defendant.

### FINAL JUDGMENT AND ORDER

GLEN M. WILLIAMS, Senior District Judge.

This case was referred pursuant to 28 U.S.C. § 636(b)(1)(B) to the Honorable Pamela Meade Sargent, United States Magistrate Judge. The Magistrate Judge has filed a report recommending that the

court grant the defendant's motion (Docket Item No. 94), and deny the plaintiff's motion, (Docket Item No. 97). Objections to the Report and Recommendation have been filed, and the court, upon *de novo* review of the record, is of the opinion that the report should be adopted. It is, accordingly,

**ADJUDGED and ORDERED**

that the plaintiff's motion shall be and is hereby DENIED, and the defendant's motion shall be and is hereby GRANTED.

The Clerk is directed to send certified copies of this Order to all counsel of record.

The Clerk is directed to close the case.

## *REPORT AND RECOMMENDATION*

SARGENT, United States Magistrate Judge.

Bizmark, Inc., ("Bizmark"), and Roy L. Wells Jr. and Roger N. Wells, the shareholders of Bizmark, brought this suit against defendants Air Products, Inc., ("Air Products") (formerly Industrial Gas & Supply Co., Inc., ("Industrial")), and David Luther, ("Luther"), seeking to recover the balance of the deferred purchase price for a sale of assets under a commercial asset purchase agreement. This matter is before the court on Defendant Air Products, Inc.'s Motion For Summary Judgment On the Complaint And For Partial Summary Judgment On the Counterclaim, ("Defendant's Motion"), (Docket Item No. 94), Defendant Air Products, Inc.'s Memorandum In Support Of Its Motion For Summary Judgment, ("Defendant's Brief"), (Docket Item No. 95), Bizmark's Motion For Partial Summary Judgment, ("Plaintiff's Motion"), (Docket Item No. 97), Bizmark's Motion For Summary Judgment,[1] (Docket Item No. 100), Defendant Air Products, Inc.'s Memorandum In Opposition To Plaintiff Bizmark, Inc.'s Motion For Partial Summary Judgment, (Docket Item No. 104), Defendant Air Products, Inc.'s Memorandum In Opposition To Plaintiff Bizmark, Inc.'s Motion For Summary Judgment, (Docket Item No. 105), and Defendant Air Products, Inc.'s Supplemental Memorandum In Support Of Its Motion For Summary Judgment On The Complaint And For Partial Summary Judgment On The Counterclaim, (Docket Item No. 106.) Jurisdiction over this matter is based upon diversity of citizenship. *See* 28 U.S.C.A. §§ 1332, 1441 (West 1993 & Supp.2005). These motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties were heard on these motions on January 30, 2006. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

### *I. Facts*

For purposes of the court's consideration of the motions, the court has reviewed the facts set forth in the depositions, answers to interrogatories, admissions and affidavits submitted to the court. Based on that review, it appears that there is no genuine issue of material fact as to the motions currently before the court. The facts recited below are the undisputed facts gathered from the parties' submissions.

On August 11, 1994, Bizmark was incorporated, and on September 30, 1994, Bizmark assumed the loans of Wells, Waters and Gases, Inc., ("Wells Waters"), totaling $176,341.43 for Wells Waters' equipment.

---

1. Based on counsel's representations, this motion will be treated as a response brief to

Defendant's Motion.

According to Roger N. Wells, ("Roger Wells"), a shareholder of both Wells Waters and Bizmark, Bizmark was formed to repay Wells Waters' loans because Wells Waters was in financial distress. Roger Wells could not remember whether there was any initial capitalization of Bizmark. However, Roger Wells indicated that Bizmark owned no additional assets from those it acquired from Wells Waters, and no funds were exchanged between the parties. No determination of Wells Waters' goodwill was calculated either, but Bizmark continued to service some of Wells Waters' customers. Bizmark also continued to operate in some of Wells Waters' prior locations and proceeded to trade in its business under the name Wells Waters. Wells Waters was not officially terminated until September 1, 1995.

On June 30, 1995, Bizmark, doing business as Wells Waters; the shareholders of Wells Waters, Roy L. Wells Jr. and Roger Wells; Industrial and David Luther, the president of Industrial, entered into an asset purchase agreement, ("Agreement"), (Exhibit 1 to Defendant's Brief). The Agreement provided that Bizmark would sell to Industrial certain of its assets (primarily gas cylinders). Pursuant to the Agreement, the base purchase price of the assets was $358,383, an amount that would be adjusted after an examination of Bizmark's inventory and cylinders in order to compute the actual purchase price, ("Adjusted Base Purchase Price"). Adjustments would be made for the true value and quantity of the cylinders that Air Products would buy. Paragraph 4 of the Agreement mandates that the determination of the value of Bizmark's inventory was to be made within five working days of the closing date, and the determination of the value of Bizmark's cylinders was to be made by October 1, 1995. The Agreement further provides at Paragraph 8(b):

Seller has full complete and absolute title to the Purchased Assets free and clear of any lien, charge or encumbrance. In the event there is a lien, charge or other encumbrance in any of the Purchased Assets, Seller or Shareholders shall cause the same to be released on or prior to the Closing Date and shall provide Buyer with evidence of the release. By purchase of the Purchased Assets, Buyer shall receive good and absolute title thereto, free from any lien, charge or encumbrance thereon.

Paragraph 14 of the Agreement states:

Payments under the Note evidencing the Deferred Purchase Price, as described in *Paragraph 5(b)*, together with accrued interest, shall be paid by Buyer to Seller subject to the terms and provisions of this *paragraph* and *Paragraph 15*. The Deferred Purchase Price shall constitute a source of funds to be utilized as necessary to indemnify and hold Buyer harmless from any breach of Seller's and/or Shareholder's warranties, covenants and provisions contained in this Agreement pursuant to the provisions of *Paragraph 15(a)*, and any adjustments to the Base Purchase Price, pursuant to the provisions of *Paragraph 4*; that is, confirmation of final inventory valuations by October 1, 1995 and the quantity and type of cylinders. Payments due under the Note to Seller shall be adjusted in the event there are any adjustments to the Base Purchase Price or there is a claim asserted against Buyer for which the warranty and liability adjustments as described in *Paragraph 15* are applicable by deducting from the amounts owed under the Note any amount which Buyer is required to pay on the claim.

Paragraph 15 provides in pertinent part:

The warranties, covenants and promises of Seller and Shareholders contained in

this Agreement shall survive the Closing and Seller and Shareholders shall indemnify and hold Buyer harmless upon demand against all claims, losses, costs, fees and expenses, including court costs and reasonably attorney fees, resulting from any breach of Seller's and/or Shareholders' warranties, covenants or representations including, without limitation, any adjustments to the Base Purchase Price as provided in *Paragraphs 4 and 14*. Seller and Shareholders further agree to and shall indemnify and hold Buyer harmless upon demand against any claims, losses, costs, fee and expenses, including court costs and reasonable attorney fees, resulting from any indebtedness or liability of Seller which accrued or arose from a state of facts existing on or prior to the Effective Date, in the event a claim for payment thereof is asserted against Buyer.

In order to take advantage of the indemnification clauses in Paragraphs 14 and 15 for a breach of warranty, the offended party must communicate in writing to the offending party within 30 days after the event giving rise to the claim or loss.

David Luther signed the Agreement as "guarantor." Luther also was responsible for conducting "due diligence background research" on Bizmark's assets to ensure that Bizmark's representations were accurate. To this end, Luther contacted Mark A. Kolmer, ("Kolmer"), Controller of Coyne Cylinder Company, ("Coyne"), the manufacturer of approximately 80 percent of the cylinders that Industrial was to buy from Bizmark. Kolmer informed Luther that Coyne had not been paid for the cylinders in question by the original purchaser, Oxyco, Inc.,[2] ("Oxyco"), and that Coyne, therefore, still claimed a purchase money lien on the cylinders. To substantiate this claim, on July 11, 1995, Kolmer faxed Luther a Request for Admissions and a final Order from the Circuit Court of Wise County, Virginia, in the matter of *Coyne Cylinder Co. v. Oxyco, Inc.*, L92–66 (1992) (granting judgment in favor of Coyne against Oxyco in the amount of $239,783.23 in light of Oxyco's failure to answer Coyne's Request for Admissions), certain UCC financing statements that Coyne had filed to perfect its security interest in the said cylinders, assorted unpaid Coyne invoices pertaining to the cylinders and two Coyne Security Agreements reflecting Coyne's secured interest in the cylinders. Roger Wells also notified Luther as to the existence of Coyne's lien.

After the closing on July 12, 1995, the balance of the deferred purchase price was evidenced by a separate nonnegotiable promissory note, (the "Note"), (Exhibit 2 to Defendant's Brief), dated July 12, 1995, made by Industrial and payable to Bizmark. The Note was to be paid in 60 consecutive monthly installments until July 12, 2000. Luther was not a party to the Note. The Note states in pertinent part:

> If default be made in the payment of any installment under this Note, and, after ten (10) days prior written notice to Maker, the installment shall continue to be in default, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the Holder of this Note.

2. Oxyco, a corporate predecessor to Bizmark, incorporated on May 14, 1986, and dissolved on September 1, 1993. Upon the dissolution of Oxyco, Bizmark acquired the Coyne cylinders. Bizmark contends that Oxyco's shareholders contributed the Coyne cylinders to Bizmark. (Bizmark's Motion For Summary Judgment at 5–6.) According to Roger Wells, however, Bizmark acquired these encumbered cylinders by simply taking them from Oxyco. (The Deposition Of Roger Neil Wells, ("Roger Wells Depo."), at 64), (Exhibit 7 to Defendant's Brief).

The Note further states that the "[f]ailure to exercise this option [to give the ten (10) days prior written notice] shall not constitute a waiver of the right to exercise the [option] in the event of any subsequent default."

Industrial did not determine the value of Bizmark's cylinders to arrive at the Adjusted Base Purchase Price of the cylinders by October 1, 1995, as directed by the Agreement. However, over the next couple of months, Industrial returned the encumbered cylinders that were not currently in use by Industrial customers to Bizmark and repeatedly urged Bizmark to negotiate a settlement of the liens with Coyne, in order to enable Industrial to purchase the cylinders still held by them. On December 10, 1995, Coyne's security interest in the cylinders became unperfected because a continuation statement was not filed. In a letter dated March 6, 1996, Luther informed Roger Wells that if the liens were not negotiated with Coyne by March 25, 1996, then Industrial would adjust the purchase price of the cylinders. Nevertheless, on March 26, 1996, Luther confirmed, in writing, a telephone conversation between Luther and Roger Wells, whereby Luther agreed for Industrial to purchase all the cylinders that Bizmark had originally intended to sell it, so long as the liens on the cylinders were released from Coyne. When Industrial determined that an unacceptable amount of time had lapsed to allow Bizmark to secure the release of Coyne's liens on the cylinders, it reduced the purchase price of Bizmark's assets to reflect that Industrial was not purchasing the cylinders encumbered by Coyne liens. On April 3, 1996, Industrial provided to Bizmark the calculations, by which Industrial reduced the purchase price. On November 3, 1997, Air Products purchased the stock of Industrial and assumed the note payments to Bizmark.

Industrial and Air Products paid the adjusted purchase price in full.

## II. Procedural History

On May 27, 2004, Bizmark and its shareholders filed suit in state court against Air Products and Luther, contending that Air Products' last 52 payments under the Note had been deficient, and, consequently, Air Products had breached the Agreement. In Air Products' answer dated December 27, 2004, it filed a counterclaim against Bizmark, alleging that Bizmark has successor liability to Wells Waters, which Air Products received a judgment against on March 22, 1994. Air Products alleged that Bizmark was fraudulently formed in an attempt to hinder, delay or defraud creditors and was merely a continuation of Wells Waters. Air Products further alleged that Bizmark made certain misrepresentations to Industrial when the Agreement was signed. Therefore, Air Products counterclaimed for breach of the Agreement and requested a declaratory judgment on the successor liability issue, so that it could offset the amount of the judgment against Wells Waters against any amount it might be determined to owe Bizmark.

The defendants removed the case to federal court and filed a motion to dismiss on the ground that plaintiffs' claims were barred by the applicable statute of limitations. Plaintiffs conceded that the shareholders were not proper parties to the action, so all claims by them were dismissed. The court did not apply Virginia's five-year period of limitations for written contracts because it found that the UCC period applied because the action was one for a breach of contract for the sale of goods. *Bizmark, Inc., et al. v. Indus. Gas & Supply Co., Inc.*, 358 F.Supp.2d 518, 521, n. 3 (W.D.Va.2005). Instead, the court applied a six-year period of limitations to Industrial and a four-year period

of limitations to Luther, since he was not a party to the Note. *See Bizmark*, 358 F.Supp.2d at 520–21. The court held that all claims against Industrial for amounts covered by installments of the deferred purchase price due prior to six years before May 27, 2004, the date the action was filed, were barred, and all claims against Luther for amounts covered by installments of the deferred purchase price due prior to four years before May 27, 2004, were barred. *See Bizmark*, 358 F.Supp.2d at 521.

On May 4, 2005, Bizmark filed a Motion for Reconsideration, (Docket Item No. 36), which the court denied on May 31, 2005. However, Bizmark, in its Second Motion For Reconsideration And Motion To Dismiss A Party, ("Second Motion for Reconsideration"), (Docket Item No. 50), introduced new facts, which were not before the court for the prior motions. In Bizmark's Second Motion For Reconsideration, Bizmark set forth the following additional facts. After Air Products' payment on August 12, 1999, was deemed deficient, Bizmark sent Air Products a letter of demand on August 17, 1999, that stated,

> Bizmark, Inc. hereby demands that Industrial Gas and Supply, Inc., bring that note owed to Bizmark, Inc. by Industrial Gas and Supply, Inc. up to date by paying all interest, penalties, and principal that are in arrears.
>
> These arrears, include, but are not limited to, the difference in the amount of the note payment amounts as set forth in the note and contract and the amount actually paid plus any interest that is due on those amounts.
>
> This notice will include and be considered as notice to David Luther, who has personal liability on the debt.

Bizmark explained that it did not have proof that it had sent the written demand until Luther provided such evidence in his Initial Disclosure. Despite receiving the written demand, neither Air Products nor Luther brought the Note up to date, but simply ignored the letter. Pursuant to the Note, all payments under the note were accelerated without further notice to Air Products or Luther. On November 11, 2005, the court held that Bizmark accelerated as a matter of law but denied Bizmark's Second Motion for Reconsideration. *Bizmark, Inc., et al. v. Indus. Gas & Supply Co., Inc.*, No. 2:04cv00109, 2005 WL 2931963, at *4, 2005 U.S. Dist. LEXIS 26707, at *11 (W.D.Va. Nov. 4, 2005). The court granted Bizmark's motion to dismiss Luther as a party, and to that same effect, granted Luther's motion for judgment on the pleadings. *Bizmark, Inc.*, No. 2:04cv00109, 2005 WL 2931963 at *5, *7, 2005 U.S. Dist. LEXIS 26707 at *13, *20.

On January 12, 2006, Air Products filed its pending motion for summary judgment, along with accompanying documents proffered to establish that Air Products' adjustment to the base purchase price was not ineffective merely because the adjustment occurred later than the date originally contemplated by the Agreement and that Bizmark's inability to convey clear title to the cylinders encumbered by Coyne's lien to Air Products justified the reduction in the base purchase price.[3] Air Products also requests partial summary judgment on Count Two of its counterclaim. On January 15, 2006, Bizmark filed its pending motion for partial summary judgment to prove that Count Two of Air Products' counterclaim is barred by the statute of limitations and that the entire

---

**3.** Bizmark has offered no evidence challenging Air Products' evidence as to the number of Coyne cylinders that should be excluded from the Agreement nor has Bizmark challenged the value placed on these cylinders.

principal and accrued interest due on the Note that Air Products owes Bizmark is not barred by the statute of limitations. Bizmark also asks the court to again reconsider its earlier ruling that Bizmark's claims against Air Products based upon installment payments due prior to six years before May 27, 2004, are barred by the statute of limitations. On January 24, 2006, Bizmark filed its pending motion for summary judgment on its claim against Air Products for $131,615 plus applicable interest at the rate of 8.5 percent per annum.

### III. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), cert. denied, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Matsushita, 475 U.S. at 587–88, 106 S.Ct. 1348; Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir.1995); Miltier v. Beorn, 896 F.2d 848, 850 (4th Cir.1990); Ross, 759 F.2d at 364; Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir.1980). In other words, the nonmoving party is entitled to have " 'the credibility of her evidence as forecast assumed.' " Miller, 913 F.2d at 1087 (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979)). However, when a moving party supports its motion with affidavits or depositions, the nonmoving party cannot rest on mere allegations, but must set forth specific facts in response showing that there is a genuine issue for trial. See Anderson, 477 U.S. at 248–50, 106 S.Ct. 2505.

It is well-settled that federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, Virginia is the forum state. In Virginia, the making of a contract is governed by the place where the contract is made, and performance is to be governed by the law of the state of performance. See Occidental Fire & Cas. Co. v. Bankers & Shippers Ins. Co., 564 F.Supp. 1501, 1503 (W.D.Va.1983). Moreover, the place of the payment of a note is determinative of the place of performance of the contract. See MICHIE'S JURISPRUDENCE OF VA. & W.VA., Conflict of Laws, Domicile & Residence, ("MICHIE'S"), § 25 (1999) (citing Gale v. S. Bldg. & Loan Ass'n, 117 F. 732, 735–36 (W.D.Va.1902)). Since payments under the Note were payable to Bizmark, which had its principal place of business in Virginia, Virginia law is controlling.

Bizmark's motion for judgment in this case purports to contain a cause of action against Air Products for breach of contract. However, Air Products argues that it did not breach the Agreement because its actual knowledge of Coyne's lien prohibited it from obtaining clear title to the Coyne cylinders. (Defendant's Brief at 3.) Air Products, therefore, argues that its adjustment to the base purchase price was not ineffective merely because the adjustment occurred later than the date originally contemplated by the Agreement and that Bizmark's inability to convey clear title to the cylinders encumbered by Coyne's lien justified its reduction in the base purchase price. (Defendant's Brief at 4.) As such, Air Products argues that there is no triable issue as to breach of contract, and it is entitled to summary judgment as a matter of law. (Defendant's Brief at 4.)

■ Virginia law in effect at the time of the formation of the parties' contract provided that upon the lapse of a security interest that was perfected by filing, the security interest was deemed to have been unperfected as against a person who became a purchaser before the lapse. *See* VA. CODE ANN. § 8.9–403(2) (1995). Since the Coyne lien became unperfected after the parties signed the Agreement, Coyne's security interest will be deemed to have been unperfected as against Air Products at the time of purchase. Under the Virginia law in effect at the time that Coyne's lien became unperfected, an unperfected security interest is subordinate to the rights of a person who is not a secured party but who is a buyer not in the ordinary course of business who buys goods, to the extent the buyer gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected. *See* VA. CODE ANN. § 8.9–301(1)(c) (1995). Although Luther continued to affirm that Air Products

would purchase the Coyne cylinders if Bizmark would secure the release of Coyne's lien, Air Products could not have taken the cylinders free from Coyne's unperfected lien because Air Products had knowledge of Coyne's security interest. Contrary to Bizmark's argument in its motion for summary judgment, under the clear language of § 8.9–301(1)(c), an unperfected security interest will be subordinate to the competing claim of a buyer only if the scenario meets every condition of the statute, including that the buyer did not have knowledge of the security interest. Therefore, the mere fact that Air Products had actual knowledge of Coyne's security interest removes the scenario from the realm of the statute, and it is irrelevant that Coyne's security interest was perfected before Air Products purchased the cylinders. Despite its interest becoming unperfected, Coyne continued to take priority over any interest of Air Products.

■ The court must next address whether, in light of the fact that Air Products could not have taken the cylinders free from Coyne's security interest, it breached the Agreement by adjusting the base purchase price after the deadline set forth in the Agreement. I begin with the basic proposition that a purchaser of goods acquires all title which his transferor had or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. *See* VA. CODE ANN. § 8.2–403(1) (1995). Therefore, if this court finds that Bizmark did not own the Coyne cylinders, Bizmark could not have transferred title to them to Air Products. The court has before it two competing claims: Air Products asserts that Bizmark took the cylinders from Oxyco, while Bizmark claims that Oxyco's shareholders contributed the Coyne cylinders to Bizmark. In support of its argument, Air Products sub-

mitted the deposition of Roger Wells, in which Wells stated that Bizmark acquired the Coyne cylinders by taking them from Oxyco after Oxcyo dissolved. Wells stated, "Oxyco was out of business. Coyne Cylinders would never come and get the cylinders, so Bizmark just took the cylinders." (Roger Wells Depo. at 64.) On the other hand, aside from Bizmark's blank assertion of how it alleges Bizmark obtained the Coyne cylinders, it has proffered no evidence to support its theory. Bizmark has simply cited the provision of the Virginia Code, which sets forth the procedure for liquidation of assets upon an automatic termination of corporate existence. Bizmark has not submitted any evidence that this procedure was followed. There is no other evidence before the court on whether Bizmark owned the gas cylinders at the time of the Agreement.

■ At this stage of the proceedings, when a moving party supports its motion with affidavits or depositions, the nonmoving party cannot rest on mere allegations, but must set forth specific facts in response showing that there is a genuine issue for trial. *See Anderson,* 477 U.S. at 248–50, 106 S.Ct. 2505. In this case, Bizmark attempts to rely on the mere allegation that Oxyco's shareholders contributed the Coyne cylinders to Bizmark, even though Air Products supports its claim with Wells's deposition to the contrary. As such, this court finds that Bizmark simply took the Coyne cylinders from Oxyco without its assent and, therefore, the uncontradicted facts before the court show that Bizmark did not own the Coyne cylinders it attempted to convey to Air Products. Since a thief takes no title in the property he steals and can transfer none, *see Castle Cars, Inc. v. U.S. Fire Ins. Co.,* 221 Va. 773, 273 S.E.2d 793, 796 (1981), Bizmark could not convey to Air Products good title to the cylinders. Even if Biz-

mark had presented evidence that it had properly acquired these cylinders in the dissolution of Oxyco, the undisputed evidence shows that Bizmark could not convey the cylinders unencumbered, as required by the Agreement.

■ The court's next function is to determine whether, under the terms of the Agreement, Air Products could adjust the base purchase price for Bizmark's inability to convey good title to the Coyne cylinders after October 1, 1995, without breaching the Agreement. A construction of the contract is in order. As stated by the Virginia Supreme Court,

[i]t is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of [the] contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

*Meade v. Wallen,* 226 Va. 465, 311 S.E.2d 103, 104 (1984).

Paragraph 4 of the Agreement provides the grounds for the adjustment of the base purchase price based on the value and quantity of the cylinders and sets the deadline for such computation as October 1, 1995. Also in the parties' Agreement, Bizmark warranted that the cylinders would be free and clear of any lien, charge or encumbrance. In the event there was a lien, charge or other encumbrance in any of the purchased assets, Bizmark warranted to release the encumbrance on or prior to the closing date and would provide Air Products with evidence of the release. Pursuant to Paragraph 15 of the Agreement, all warranties survived the closing, and Bizmark agreed to hold Air Products

harmless upon demand against all claims, losses, costs, fees and expenses, including court costs and reasonable attorney fees, resulting from any breach of Bizmark's warranties, covenants or representations. Furthermore, Paragraph 14 allows Air Products to adjust the payments due under the Note in the event there is a claim asserted against Air Products for which the warranty and liability adjustments in Paragraph 15 apply by deducting the amounts owed under the Note by any amount which Buyer is required to pay on the claim.

By the terms of the Agreement, Bizmark breached the Agreement by failing to release the Coyne lien on or prior to the closing date and by its ability to convey good title to the cylinders. However, there is no contention by either party or any evidence before the court that Air Products communicated in writing to Bizmark about a claim under Paragraphs 14 and 15 as required by Paragraph 15c(i) in order to adjust the base purchase price for Bizmark's breach of warranty. Therefore, Air Products was not justified under Paragraphs 14 and 15 of the Agreement to adjust the base purchase price.

■■■■ Nonetheless, this court finds that Air Products was justified in adjusting the base purchase price under Paragraph 4 of the Agreement. Pursuant to Paragraph 4, the adjustment of the base purchase price accounted for the number of cylinders Bizmark actually owned and the value of those cylinders. As stated above, the uncontradicted evidence in this case shows that Bizmark did not own the Coyne cylinders and that these cylinders were encumbered. Based on this, Paragraph 4 provided Air Products the avenue to decrease the base purchase price to account for the fact that Air Products could not buy the Coyne cylinders from Bizmark. Yet by the terms of the Agreement, this adjust-

ment should have been made by October 1, 1995. Air Products argues that the delay in adjustment of the base purchase price was not ineffective because the adjustment provision was not a material term, the Agreement did not provide for a penalty in the case of delay and the delay did not prejudice Bizmark. (Defendant's Brief at 11–12.) I agree. Before a partial failure of performance of a party to a contract will constitute a total breach, the act failed to be performed must go to the root of the contract—in other words, it must be material. *See Neely v. White*, 177 Va. 358, 14 S.E.2d 337, 341 (1941). Ordinarily, time is not of the essence of a contract unless made so by its terms or unless it is an element of a condition precedent. *See Dziarnowski v. Dziarnowski*, 14 Va.App. 758, 418 S.E.2d 724 (1992) (quoting Michie's Contracts § 59 (1999)). In determining whether time is of the essence of a contract, the general rules that govern construction of a contract apply. The court should first look to the language used and, if that is not conclusive, the court looks to determine the intentions of the parties by their actions. *Morris v. Harrop*, 154 Va. 127, 152 S.E. 343, 345 (1930). The mere fact that a date is listed in a contract for performance of a certain act, however, does not make time of the essence. *Morris*, 152 S.E. at 345. The RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981), points to five factors that are useful in determining the materiality of a breach:

1. The extent to which the injured party will be deprived of the benefit which he reasonably expected;

2. The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

5. The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

 Utilizing these factors, the court finds that the undisputed facts show that time was not of the essence of this contract, and, therefore, Air Products' delay in adjusting the base purchase price did not render the adjustment ineffective. First, the delay did not deprive Bizmark of the benefit it expected under the contract. It is clear under the language of the Agreement that the parties intended that Air Products would purchase only the unencumbered assets of Bizmark and that an accounting of Bizmark's cylinders would be made and an adjustment made in the portion of the purchase price allotted for the cylinders. Bizmark received that benefit. While Air Products would have been justified in canceling the purchase after it learned of the Coyne lien and Bizmark's failure to gain release of that lien, the uncontradicted evidence shows that Air Products continued to assure Bizmark that it would buy the cylinders, so long as the lien was removed. Only after months had lapsed for Bizmark to secure the release of the lien did Air Products reduce the purchase price. Second, to disallow Air Products to adjust the base purchase price after the deadline would result in a severe forfeiture to Air Products, as it would have to pay Bizmark for encumbered cylinders that Air Products returned to Bizmark and which Bizmark never even owned. Third, Air Products' late adjustment of the base purchase price comports with the standard of good faith and fair dealing. Air Products refrained from making the adjustment by the date originally contemplated under the Agreement as an accommodation to Bizmark. The delay permitted the identification of additional assets that Bizmark could sell to Air Products and provided an opportunity for Bizmark to negotiate a release of the Coyne lien. Since Air Products' adjustment after the deadline set forth in the Agreement did not result in a material breach of the agreement that would have entitled Bizmark to cancel the contract, Air Products was able to "cure" and adjust the base purchase price after October 1, 1995. Accordingly, the adjustment was not rendered ineffective, and the resulting decrease in payments under the Note did not constitute a breach of contract. It also is important to note that Bizmark has offered no evidence challenging the evidence tendered to the court by Air Products as to the adjustments made to the purchase price. Thus, I find that no genuine issue of material fact exists as to Bizmark's breach of contract claim and will recommend that the court grant summary judgment in favor of Air Products on this claim.

 Bizmark also requests the court to consider its earlier ruling that claims against Air Products for installment payments due prior to six years before May 27, 2004, the date the action by Bizmark was filed, are barred by the statute of limitations. (Plaintiff's Motion at 1, 11–20.) Should the court agree with the finding that Air Products' adjustment of the purchase price after October 1, 1995, was not a breach of contract, there would be no reason to readdress this issue. Nevertheless, the undersigned will address the issue for the convenience of the court. Although Bizmark cited case law in an attempt to support its position that acceleration had the effect of creating a new statute of limitations for every payment under the Note, this court continues

to find the argument unpersuasive. Acceleration did not have the effect of making payments already in arrears due on August 31, 1999, the date of acceleration. It is well-settled law in Virginia and elsewhere that a cause of action accrues immediately upon the failure to make an installment payment, and the statute of limitations begins to run as of the delinquent date. *See Bizmark,* 358 F.Supp.2d at 521 (citing *Williams v. Matthews,* 103 Va. 180, 48 S.E. 861, 862 (1904)); *see also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.,* 522 U.S. 192, 208, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (noting that "the standard rule for installment obligations" is that a new cause of action, carrying its own limitations period, "arises from the date each payment is missed") (quoting *Bd. of Trustees of Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp.,* 43 F.3d 852, 857 (3d Cir.1994)). Bizmark's reliance on *Bay Area Laundry,* 522 U.S. at 210, 118 S.Ct. 542, is misplaced. This case simply reiterates the well-established rule that, the statute of limitations on an accelerated debt runs from the date the creditor exercises its acceleration option, not earlier. *Bay Area Laundry,* 522 U.S. at 209 n. 5, 118 S.Ct. 542. Furthermore, "an accelerated debt" is only that portion of a debt whose due date is being accelerated. This case does not imply that payments that were already due on the date of acceleration develop a new statute of limitations. Therefore, the cause of action for payments past due before August 31, 1999, did not accrue on August 31, 1999, but on the date that each payment was deficient. To accept Bizmark's position would allow for the anomalous possibility that there could be payments whose statutes of limitations already had run by the date of acceleration but could, nevertheless, be sued upon simply by virtue of acceleration.

Although the court will not be required to address the issue if it adopts the undersigned's recommendation to grant summary judgment in Air Products' favor on Bizmark's breach of contract claim, the undersigned will address the parties' cross-motions for summary judgment on Count Two of Air Products' counterclaim for the convenience of the court. Count Two of Air Products' counterclaim appears to seek a declaratory judgment imposing liability against Bizmark, under a successor liability theory for a judgment previously entered in favor of Air Products against Wells Waters. Bizmark argues that this counterclaim is essentially one for money damages and is time-barred under the statute of limitations. (Plaintiff's Motion at 1, 4–11.) As such, Bizmark argues that no triable issue as to Air Products' declaratory judgment claim exists, and Bizmark should be awarded summary judgment as a matter of law. (Plaintiff's Motion at 1.)

■ Air Products' counterclaim states, "[i]f Bizmark is liable as a successor entity for the debts and obligations of [Wells Waters], then Industrial Gas (now Air Products) is entitled to offset any and all amounts remaining under the Judgment." The statute of limitations in Virginia for an action brought to enforce a judgment is 20 years running from the date of the judgment. *See* VA. CODE ANN. § 8.01–251(A) (2000 Repl.Vol. & Supp.2005). It is clear from Air Products' counterclaim that it is not seeking a new judgment against Bizmark, but is simply trying to enforce a previous judgment it obtained against Wells Waters against Bizmark. That being the case, I find that the applicable limitations period is 20 years from the date of judgment. The judgment at issue became final on February 3, 1993. Air Products' counterclaim to enforce this judgment was filed on December 27, 2004.

Therefore, the counterclaim was filed within the applicable limitations period.

■ In Virginia, a corporation that "purchases or otherwise` receives the assets of another company is generally not liable for the debts and liabilities" of the predecessor. *Kaiser Found. Health Plan of the Mid–Atl. States v. Clary & Moore, P.C.,* 123 F.3d 201, 204 (4th Cir.1997). However, the Supreme Court of Virginia has enumerated four exceptions to this rule and will hold a purchasing corporation liable for the obligations of the selling corporation in the following situations: "(1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, *or* (4) the transaction is fraudulent in fact." *Harris v. T.I., Inc.,* 243 Va. 63, 413 S.E.2d 605, 609 (1992).

■ `Here, Air Products argues that Bizmark is merely a continuation of Wells Waters. The key element for an assessment of whether a corporation is merely a continuation of the selling corporation is the "common identity of the officers, directors, and stockholders" in the successor and predecessor corporations. *Harris,* 413 S.E.2d at 609. Nonetheless, when "the purchase of all the assets of a corporation is a bona fide, arm's-length transaction, the 'mere continuation' exception does not apply." *Harris,* 413 S.E.2d at 609. Although less important than the common identity of ownership, courts also find relevant whether the new corporation continues in the same business as its predecessor. *See Clary & Moore,* 123 F.3d at 205. Additional factors that a court may consider in its assessment are whether two corporations or only one remain and whether the successor corporation continues to op-

erate at the same location with the same telephone number as its predecessor. *See Clary & Moore,* 123 F.3d at 205. Furthermore, when a predecessor corporation's assets are transferred for less than adequate consideration, the successor is likely to be a mere continuation. *See Clary & Moore,* 123 F.3d at 205.

■ Based on the undisputed facts of this case, I find that Bizmark is liable to Air Products for Wells Waters' debts and obligations under the mere continuation doctrine. As a result, Air Products is entitled to offset any amount remaining under the judgment it obtained against Wells Waters, if the court should find that Air Products is liable to Bizmark for breach of contract. The undisputed facts show that Roy Wells and Roger Wells were shareholders, officers and directors of Wells Waters and Bizmark. Bizmark also. continued in the same business as Wells Waters. In his deposition, Roger Wells was unable to recall any business that Bizmark conducted that Wells Waters had not; in fact, Bizmark continued in the gas business and filed a fictitious name to operate as Wells Waters. Bizmark even continued to service Wells Waters' customers. Approximately a year after Bizmark incorporated, Wells Waters terminated and only Bizmark remained. However, Bizmark operated in some of Wells Waters' prior locations, and Roger Wells could not remember whether the two companies used the same business telephone number. Moreover, Bizmark simply assumed the loans for Wells Waters' equipment, but did not give any other consideration to Wells Waters for the transfer for Wells Waters' customer list, goodwill or the like. In response to an inquiry as to why Bizmark was formed, Roger Wells answered, "there was such financial distress that Wells Waters & Gases couldn't continue to, you know, operate in the form

it was which led to the Chapter 7." (Roger Wells Depo. at 109.) I find that the factors enumerated in *Clary & Moore* direct the court to a conclusion that Bizmark was a mere continuation of Wells Waters. Therefore, I find that no genuine issue of material fact exists as to Count Two of Air Products' counterclaim and will recommend that the court grant summary judgment in favor of Air Products on this claim.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Genuine issues of material fact do not exist as to the plaintiff's breach of contract claim, and the defendant should be granted summary judgment as a matter of law on this claim;

2. The court should refuse to reconsider its earlier ruling that the statute of limitations has run on any claim based on any Note payment due earlier than six years prior to the date of filing Bizmark's claim;

3. Air Products' counterclaim is not a new claim for damages against Bizmark, but rather a claim to enforce a judgment. As such, the statute of limitations has not run on that claim; and

4. Genuine issues of material fact do not exist as to defendant's counterclaim to enforce a judgment obtained against Wells Waters against its successor, Bizmark, and summary judgment should be granted in favor of the defendant on the counterclaim.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Defendant's Motion, (Docket Item No. 94), and deny the Plaintiff's Motion, (Docket Item No. 97).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp.2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.